MARGARET J. PRAGER, *Guardian, etc. v.* W. H. CHAPMAN & SONS COMPANY

(CC 620)

Submitted January 10, 1940.   Decided June 22, 1940.

W. C. *Grimes* and *Eugene M. Prager,* for plaintiff.

*McCamic & Clarke (McCamic & Clarke* and *Wesley R. Tinker, Jr.,* of counsel), for defendant.

Fox, Judge:

This is a certified case from the Circuit Court of Ohio County involving the single question of whether Sec. 8, Article 2 of Chapter 104 of the Acts of the Legislature of 1937, amending the Workmen's Compensation Act, imposes an enforceable liability upon a non-casual, non-subscribing employer for damages suffered by an employee by reason of a personal injury sustained in the course of and resulting from his employment, not caused by wrongful act, neglect or default of the employer, nor of the employee. The trial court overruled the defendant's demurrer to the plaintiff's declaration in an action of trespass on the case, and the specific points raised by the demurrer turn upon the question of whether or not the allegations contained in the declaration are sufficient to justify a recovery because of the fact that they do not allege a breach of legal duty on the part of the employer or any default committed by him in connection with the injury.

One of the sections amended by Chapter 104, above referred to, is 23-2-8, Code 1931. That section, before amendment, provided that employers failing to elect to pay into the workmen's compensation fund or defaulting in payments "shall be liable to their employees (within the meaning of this article) for damages suffered by reason of accidental personal injuries sustained in the course of employment caused by the wrongful act, neglect or default of the employer or any of the employer's officers, agents or employees, and also to the personal representatives of such employees where death results from such accidental personal injuries, and in any action by any such employee or personal representative thereof, such defendant shall not avail himself of the following common law defenses: The defense of the fellow-servant rule; the defense of the assumption of risk; or the defense of contributory negligence; and further, shall not avail himself of any defense that the negligence in question was that of some one whose duties are prescribed by statute."

Under this statute this Court has uniformly held that there could be no recovery against a non-contributing employer, in an action at law, without a showing of wrongdoing, neglect or default, on the part of the employer, his agent or employee, proximately contributing to the injury. *Thorn* v. *Addison Bros. & Smith,* 119 W. Va. 479, 194 S. E. 771, and cases therein cited.

The section as amended by the 1937 act provides that the non-contributing or defaulting employers "shall be liable to their employees (within the meaning of this article) for all damages suffered by reason of accidental personal injuries or accidental death sustained in the course of and resulting from their employment, and in any action by any such employee or personal representative thereof, such defendant shall not avail himself of the following common law defenses: The defense of the fellow-servant rule; the defense of the assumption of risk; or the defense of contributory negligence; and further, shall not avail himself of any defense that the negligence in question was that of some one whose duties are prescribed by statute, provided no action shall lie, and no recovery shall be had, against casual employers as hereinafter defined, without allegation and proof that such accidental personal injuries or accidental death were caused by the wrongful act, neglect or default of the employer, or any of the employer's officers, agents or employees. Casual employers within the meaning hereof shall be those employing at the time of such accidental personal injuries or accidental death, in and about the operation or work in which such accidental injuries or death occurred, less than ten employees, and those employers employing more than ten employees, who have not conducted the operation or business in which accidental injuries or death occurred, for more than sixty days prior to such accidental injuries or death."

It is apparent, therefore, that under the section in question, as amended, an employer employing ten or more persons becomes liable to his employee for any accidental injury or accidental death, resulting from his employment, regardless of whether or not the accident or death resulted

from any wrongful act, neglect or default of the employer. As to casual employers the section contains the same provisions as to liability as those existing as to all employers within the act before it was amended. The importance of the amendment to employers who, within their legal rights, have elected not to become contributors to the workmen's compensation fund is apparent.

The important question is that relating to the power of the legislature to impose the liability attempted to be created by the amendment, but another question presents itself which we think should be determined at this point, and that relates to the title of the act in which the amendment was made.

Sec. 30, Art. VI of the Constitution of this state provides that "No act hereafter passed shall embrace more than one object and that shall be expressed in the title." The title of the act under consideration merely recites the purpose as being to amend certain designated sections of an existing act, and ends with this language "* * * all relating to workmen's compensation and the administration of the workmen's compensation law." This language, in our opinion, conceals rather than defines the real purpose sought by the amendment to Code, 23-2-8. According to the contention of the plaintiff below, the real object and purpose of the legislature was to create a new ground of action for personal injury, not enforceable through the administration of the compensation statutes, but outside the same, and in an action at law. If this be true, the general language quoted serves to obscure this purpose. The Constitution plainly contemplates and requires that the purpose and object of the act shall be stated in the title, and nowhere in this title is there the slightest intimation that a cause of action outside of the act is to be created thereby. There are many decisions of this Court on this question, and a rule of liberality has been followed. But, following the rule reiterated in *Bedford Corporation* v. *Price,* 112 W. Va. 674, 166 S. E. 380, we are of the opinion that the act in question cannot be sustained because of the defective title thereto.

The fundamental question involved is the power of the legislature to impose the liability without fault in an action at law entirely outside the workmen's compensation statute. It is contended that to create such liability would be to violate Sec. 1 of the Fourteenth Amendment to the Federal Constitution and Sec. 10, Art. III of the Constitution of this state, both inhibiting the deprivation of life, liberty or property without due process of law, and that the effect of the act in question is to create a liability against an employer, wholly without fault, merely because the business in which he may be engaged, requires the employment of laborers, one of whom may be injured. On the other hand it is asserted that under the police power of the state, the legislature had the right to enact the challenged legislation.

It is undoubtedly true that, under the police power of the state, liability without fault may be imposed through the use of workmen's compensation legislation, under which the requirement of contribution to a general fund to be administered by the state, is enforced. Workmen's Compensation Laws are of comparatively recent origin, and at the beginning doubt was expressed as to their being within the Federal and State Constitutions. Obviously, the very basis of every such law is to make employers liable for injuries to their employees engaged in industry, regardless of fault; and it was contended that such a law operated to violate the constitutional provisions securing the owners of property from being deprived thereof without due process of law. This contention was made especially to acts compulsory in character, and, on this ground, the first of such laws, enacted by the legislature of New York, was held unconstitutional. *Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271, 94 N. E. 431, 34 L. R. A. (N. S.) 162, Ann. Cas. 1912B, 156, decided in 1911. Later in the same year, a compensation law, elective in character, was upheld in Massachusetts. *Opinion of Justices,* 209 Mass. 607, 96 N. E. 308. Our law is founded upon the elective principle, and its constitutionality has been upheld by this Court. *De Francesco* v. *Piney Mining Co.*, 76 W. Va. 756, 86 S. E.

777; *Watts* v. *Railway Co.,* 78 W. Va. 144, 88 S. E. 659; *Rhodes* v. *Coal Company,* 79 W. Va. 71, 90 S. E. 796. More recent cases tend to sustain compulsory acts as a proper exercise of the police power of the state. *New York Central Railway Company* v. *White,* 243 U. S. 188, 37 S. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629. In *Cudahy Packing Co.* v. *Parramore,* 263 U. S. 418, 44 S. Ct. 153, 154, 68 L. Ed. 366, 30 A. L. R. 532, it was held that "workmen's compensation legislation rests upon the idea of status, not that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital." So that the trend of judicial opinion now favors the upholding of the right of the state, under its police power, to make participation in workmen's compensation funds compulsory.

But our legislature has attempted a different thing. It has not sought to impose liability on all employers by requiring them to become contributors to the workmen's compensation fund, and thereby provide for their employees the same protection afforded to those whose employers have elected to become contributors; but has so amended the act as to permit injured workmen of non-casual employers, not contributors to the fund, to institute actions at law, and to recover damages for accidental injuries, and extending the same right to their personal representatives in the case of accidental death, where the employer has not been guilty of any wrongdoing, neglect or default in any way contributing to the injury or death. It is one thing to say that the state has power to require employers to contribute to a fund to be administered by the state, for the purpose of compensating employees for injuries sustained in industry; it is quite another thing to require an employer to pay damages, from his own estate, for an injury sustained by one of his employees, in no wise due to any neglect, negligence or wrongdoing on the part of the employer. Conceding, as we do, that the state has the right, through workmen's compensation legislation, to require the creation of a fund, and to administer

the same for the benefit of those injured in industry, we do not think the legislature, under our Constitution, can arbitrarily impose liability, enforceable in an action at law, upon an employer, in the absence of a showing of wrong-doing, neglect or default on his part, proximately contributing thereto. We do not think the police power of the state can be extended to sustain such an enactment.

The police power, an attribute of sovereignty, is the state's inherent right and authority to promote the safety, health, morals and general welfare of society. It is a public matter, and one which of necessity operates through public agencies, calling for the use and application of public authority, and cannot be extended to cover private rights as between individuals. The books are full of attempted definitions of police power, but so far as we have been able to ascertain it is confined in its application to the promotion of the safety, health, morals and general welfare of society. It operates upon the public as a whole. An interesting discussion of the objects to which the power extends may be found in 11 Am. Jur. 1014, and this Court has discussed the power in *Hinebaugh* v. *James, Tax Commissioner,* 119 W. Va. 162, 192 S. E. 177, 112 A. L. R. 59, and *Nulter* v. *Road Commission,* 119 W. Va. 312, 193 S. E. 549, 194 S. E. 270.

The right to be protected in the ownership of property is guaranteed by both the Federal and State Constitutions. While the state may impose burdens upon private property, in the way of taxation, short of confiscation, and may take property for public use upon the payment of just compensation therefor, these powers must be exercised through orderly processes and with full opportunity to owners of property to assert and defend their rights therein. Subject to tax burdens and the right of eminent domain, the right to possess and use private property, so long as the same is legitimately used within the provisions of established law, is unrestricted. It would be useless for us to attempt to define due process of law, but, as to property rights, it may be stated to mean that an owner is entitled to protection thereof as against arbitrary action of

any kind which tends to deprive him of the retention, use or enjoyment thereof. To our minds, one who is the owner of property and who uses the same within the regulations laid down by law, and who meets the public burden imposed thereon in the way of taxation, cannot be deprived of that property by attempted legislative action, which, in its effect, makes such property subject to claims of individuals, as distinguished from the public, which are not based upon any breach of public or private duty, wrongdoing, neglect or default of the owner. Owners of property have the right to legitimately use the same, and so long as that use does not infringe upon the rights of others or cause injury to others, they cannot be subjected to arbitrary burdens, and particularly cannot be subjected to burdens which, in effect, operate to transfer the property from one individual to another. To say that as between an employer and employee the legislature may arbitrarily impose a liability upon the employer, the effect of which may be, in case of an injury to the employee, to transfer to him the property of the employer, merely because of the relation of master and servant, and where there is no fault on the part of either, is to assert a proposition which, to our minds, is unfair and cannot be defended. Such a proposition runs counter to any conception we have ever had of the meaning of due process of law. It takes from an employer, arbitrarily, property which he has accumulated, usually through his individual effort, and for no reason involving any misdoing on his part, any neglect of duty, or misuse of his property. To do this, it seems to us would violate every element of what is termed fair play as between individuals, and we cannot give our assent thereto. That which cannot be done directly, cannot be done indirectly. The fact that the amendment in question may have been intended to have the indirect effect of compelling all employers to become subscribers to the workmen's compensation fund, and that the amendment was embodied in the workmen's compensation statute, does not make the enactment effective. If the legislature had that purpose in mind, there was open to it a plain, simple and

direct way by which that purpose could have been undertaken.

The order of the Circuit Court of Ohio County is reversed and the action remanded for further proceedings.

*Reversed and remanded.*

HATCHER, JUDGE, dissenting:

1. Greater detail concerning the amendatory and the amended statutes than what is contained in the majority opinion, makes its first syllabic section untenable, to my mind. The amendatory act was entitled (in part), "An Act to amend and reenact sections * * * eight, article two, chapter twenty-three of the Code of West Virginia, one thousand nine hundred thirty-one." 23-2-8 of that code is entitled *"Election Not to Pay or Default in Payment of Premiums; Defenses Prohibited."* It is not necessary to descend into particulars in the title of an act, if the title gives notice of the purpose of the act. *State* v. *Thompson,* 80 W. Va. 698, 93 S. E. 810. The title of an amendatory statute may be supplemented by that of the statute amended. *State* v. *Furr,* 101 W. Va. 178, 132 S. E. 504. And where the title of the latter sufficiently expresses its object, an amendatory act need refer only to it. *Hood* v. *Wheeling,* 85 W. Va. 578, 102 S. E. 259. Under these holdings, it seems to me that since the instant act proposed to amend one prohibiting defenses to a non-paying employer, its title was sufficient to put such employer on notice.

2. The essence of the majority opinion supporting the second section, as I understand it, is that the majority believes the *imposition of personal liability upon an employer for an industrial accident, he not at fault,* "unfair" and "counter to any conception" of the majority "of the meaning of due process of law." That conviction is, of course, due to the common law tenet of *no liability without fault.* Wherefore it becomes pertinent to consider the source of the tenet. Modern research has demonstrated that the common law was not the law of the common people of England and so named, and did not exist

beyond the recorded memory of men, as was formerly taught by the text writers. There was no system of law common to England when it emerged from the Dark Ages and commenced to have a national memory. The laws were then tribal, instead of territorial. Every fief had its own customs and usages, enforced in the local courts over which there was no court of general jurisdiction. There was, in fact, no unifying juridical agency until the rise of the King's Court under the Norman kings, long after the date of Magna Charta. The jurisdiction of that court, though very limited during its early existence, did extend over the entire kingdom. Such jurisdiction made that court the first legal body ever in position to unify nationally the variant laws of the fiefs. That court, after several centuries, did weld the local laws into a fairly uniform system. Because that system was common to all of England, it became entitled *the common law of England.* The learned Professor Jenks says the common law is "the law of the royal court * * *. It is judiciary law: The men who declared it were judges, not legislators, nor wise men of the shires." Accord: Pollock and Maitland. The judge-made common law rules affecting negligence simply reflected the judicial philosophy of the times; they cannot be said to express immutable principles of justice, and therefore are not free from legislative dominion. "Plainly, these rules (the common law rules affecting negligence) as guides of conduct and tests of liability, are subject to change in the exercise of the sovereign authority of the state." *New York Central Railroad Co.* v. *White,* 243 U. S. 188, on page 200, 37 S. Ct. 247, on page 251, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629. There is nothing in the common law dogma of no liability without fault of such "exceptional sanctity" as to set it apart from, or above, the common law defenses of assumption of risk, contributory negligence and negligence of a fellow-servant. All four defenses are alike judge-made. This Court has heretofore recognized the legislative power to withdraw from the employer the last three defenses. *De Francesco* v. *Mining Co.,* 76 W. Va. 756, 86 S. E. 777; *Watts* v. *Railway*

*Co.,* 78 W. Va. 144, 88 S. E. 659. Since all of these defenses emanate from the same source, are of equal quality, and regulate the same subject, it would seem that the abolition of one rule is as fairly within the scope of legislative power as the abolition of any other. *Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686, 151 P. 398, 403. "A person has no property, no vested interest in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will, or even the whim of the legislature, unless prevented by constitutional limitations." *Munn* v. *Illinois,* 94 U. S. 113, 134, 24 L. Ed. 76. The legislature of this state is not so prevented. *Watts* v. *Railway Co., supra,* pp. 147, 148.

The only cited case supporting the view of the majority is *Ives* v. *Railroad Co.,* (N. Y.) decided in 1911. For immediate criticism of that case see note thereto in 34 L. R. A. (N. S.) 162, and 24 Harvard Law Rev. 647. Twenty-five years later, 71 C. J. Workmen's Compensation Acts, section 23, says the Ives decision "appears contrary to the trend of the subsequent authorities." That statement is mild. The Ives decision is unsupported by any subsequent authority of which I am advised, unless the obiter in *Middleton* v. *Power Co.,* 108 Tex. 96, 185 S. W. 556, be taken as support. The isolation of the Ives decision is demonstrated by the declaration of the Supreme Court of the United States in *Cudahy Packing Co.* v. *Parramore,* 263 U. S. on page 422, 44 S. Ct. on page 154, 68 L. Ed. 366, 30 A. L. R. 532, (cited in the majority opinion): "It is settled by the decisions of this court and by an overwhelming array of state decisions, that such statutes are not open to constitutional objection because they abrogate common law defenses or impose liability without fault." The "overwhelming array" may be found, at least in part, in Cooley's Constitutional Limitations (8th Ed.) 1337 et seq. note 8.

"Unfair." The common law rules governing industrial accidents were formulated in accordance with the judicial

philosophy of by-gone generations. Modern legislatures regard that philosophy as unsuited to the changed conditions of present times. So they have simply substituted another system of rules deemed more suitable. *Railway Co.* v. *White, supra; Grand Trunk Western Railway Co.* v. *Commission,* 291 Ill. 167, 125 N. E. 748, 751. It cannot, perhaps, be successfully maintained that either system is the exclusive result of logic or natural justice. But there is assuredly nothing contrary to modern notions of economics, sociology and fair play in requiring one who conducts an enterprise for profit, to assume personally the loss resulting from an industrial accident to an employee not due to his wilful misconduct. *Indemnity Co.* v. *Pillsbury, supra; Arizona Employer's Liability Cases,* 250 U. S. 400, 39 S. Ct. 553, 63 L. Ed. 1058, 6 A. L. R. 1537.

"Counter to any conception". Liability without fault, says the Supreme Court of the United States, "is not a novelty in the law. The common law liability of the carrier, of the innkeeper, or him who employed fire or other dangerous agency or harbored a mischievous animal was not dependent altogether upon questions of fault or negligence. Statutes imposing liability without fault have been sustained." *Railway Co.* v. *White, supra.* The common law liability without fault, both of the husband for antenuptial torts of his wife and of the master for acts of his servant, could also have been included in the above list.

*"The meaning of due process of law."* Mr. Cooley says that the most accurate definition of this term he has met is that in *Bank* v. *Okely,* (U. S.) 4 Wheat. 235, 244, 4 L. Ed. 559, wherein the court said, "The good sense of mankind has at length settled down to this" that the words due process of law are intended merely "to secure the individual from the arbitrary exercise of the powers of government." Approved: *Twining* v. *New Jersey,* 211 U. S. 78, 29 S. Ct. 14, 53 L. Ed. 97. A statute like the one in question is within the police power of government. *Arizona Copper Co.* v. *Hammer,* 250 U. S. 400, 39 S. Ct. 553, 560, 63 L. Ed. 1058, 6 A. L. R. 1537. Justice Holmes concurring in that case said, "There is no more certain way of securing attention to the

safety of men, an unquestionably constitutional object of legislation, than by holding the employer liable for accidents. * * * They probably will happen a good deal less often when the employer knows that he must answer for them, if they do." Results in England are said to demonstrate that making employers liable without fault has caused them to take greater steps to prevent accidents, and fewer injuries have occurred. Harvard Law Review, *supra*. Wherefore, I see no ground for considering the statute arbitrary. If not, it does not violate the due process clause, the equal protection clause, or any other constitutional guaranty. *State* v. *Hagan*, 44 N. D. 306, 175 N. W. 372; Arizona Employer's Liability Cases, *supra; Rhodes* v. *Coal Co.*, 79 W. Va. 71, 90 S. E. 796.

KENNA, JUDGE, concurring:

I agree with the conclusion reached by the majority that the part of the amendment to section 8, article 2 of the Workmen's Compensation Act, which attempts to create a right of recovery without fault against the employer therein defined, is not valid. However, I think it is not necessary at this time to directly pass upon its constitutionality. Instead of doing so, I think the provision should be held bad for the reason that it cannot be given effect without expunging other provisions of the Compensation Act in the same section which were definitely and expressly reenacted in the same act that contains the provision in question. The compensation law as amended and reenacted abolishes certain common law defenses in actions against the same class of employers against whom it provides the right to recover without fault. It is perfectly plain that the two provisions conflict and are irreconcilable and that the two combined are susceptible of but two possible constructions: either that the right of recovery without fault shall be given effect and that part of the statute abolishing certain common law defenses of the employer invalidated, or that the last named provision shall be given effect in the only possible manner that result may be ar-

rived at, which is that the common law right of action against the employer is preserved and therefore that the wording intended to create the right of recovery without fault is of no effect.

Of the two possible constructions, the one preserving the common law right of recovery involves no serious constitutional question. The construction which would give effect to a right of recovery without fault involves a serious constitutional question, in the present treatment of which the authorities are about evenly balanced.

When a statute is under consideration and there are two possible constructions, in order to arrive at the legislative intent, one of which involves a serious constitutional question and the other of which does not, the doubt is to be resolved in favor of the construction free from constitutional difficulty. For this reason I would not pass at the present time upon the constitutionality of section 8, as amended, but would hold that since the creation of the right of recovery without fault would involve a doubtful constitutional question that part of section 8 is not to be viewed as a valid enactment. If the Legislature desires to enact a clearly worded provision, the purpose of which is to create the right of recovery without fault and thus present the constitutional question and no other, that is quite a simple course to follow.

As to the title of the reenactment being insufficient to cover the subject matter of the amendment, I cannot follow the conclusion stated in the majority opinion. Of course, I agree that the subject matter, left alone, is not covered by the title of a compensation act since it relates to the legal status of employers who elect not to become subscribers. However, the original enactment of our compensation act with a fitting title abolished the common law defenses of employers who were non-subscribers, and this Court has passed upon that provision and approved it in innumerable instances. The title of an amendatory act relates to and is regarded as including the original act which it is its purpose to amend. To my mind, in order to remain consistent, the title of the recent act should not

be regarded as a reason supporting its partial invalidity on the basis adopted in the majority opinion. I do not believe that the re-codification of our existing statutes interferes with the rule that an amendatory title relates back to pre-existing enactments.