Woodrow Haney *v.* Town of Rainelle

(No. 9374)

Submitted February 2, 1943.  Decided March 2, 1943.

398

*S. H. Sharp* and *Mahan, Bacon & White,* for plaintiff in error.

*A. N. Breckinridge,* for defendant in error.

Rose, Judge:

The Town of Rainelle prosecutes this writ of error to the action of the Circuit Court of Greenbrier County, in entering judgment for $4,425.00 on a verdict in favor of Woodrow Haney in an action of trespass on the case for personal injuries received by Haney in stepping upon and breaking through the covering of a ditch at or near the door of the town's jail, which he was leaving after having incarcerated therein a prisoner in his charge.

The Towns of Rainelle and East Rainelle are municipalities situated in Greenbrier County, organized under the general laws of the State, whose territorial limits are

contiguous. East Rainelle has no jail. That of the Town of Rainelle consists of a concrete block building, located on a parcel of land, without public highway frontage and belonging to the Meadow River Lumber Company, at the rear of a lot on which stands the Knights of Pythias lodge building and which lot extends to and fronts on U. S. Highway No. 60. Immediately west of this lodge building and also fronting on Route 60 is a small building used as a business office, and west of this is a lot about two hundred feet in depth and with a frontage of one hundred and twenty-five feet and owned by the Rainelle Supply Company, and on which there is a building with a frontage of one hundred and four feet.

Access to this jail building was by a board walkway constructed and maintained by the town from Route No. 60 along the east side of the Knights of Pythias building, and, although without any arrangement or provision of the town therefor, persons approaching by automobiles frequently came to the rear of the building across the vacant portion of the land of Rainelle Supply Company, and that of the Meadow River Lumber Company. The second story of the building is leased to a firm of printers. On the first floor are the jail cells and the municipal offices. The Town of Rainelle has no title, by deed, lease, or otherwise, to the land on which its building stands or to any approach thereto.

From the time of the jail's construction, the town seems to have permitted its general use by the peace officers of the county, district and neighboring municipalities without any formal contract or ordinance or other record or written instrument relating thereto, and to have made the mayor's office room available to justices of the county for trial of cases and to the county for holding elections and for other public uses. For probably ten years what is called by the witnesses a "custom" or "practice" prevailed between the Town of Rainelle and East Rainelle by which the Rainelle jail was used for the incarceration of prisoners of East Rainelle, for which use the latter town paid at the rate of fifty cents for the use of the jail and one dollar a day for meals for each prisoner. No formal

contract was ever entered into covering this matter, and no action by either municipality appears from their records.

In February, 1941, the Town of Rainelle, through its sergeant, excavated a ditch along the end and side of its building searching for a sewer line which served the jail, and which had become obstructed. This ditch passed in front of the only entrance door to the jail and between it and the walkway leading to the highway. At the close of work on Saturday evening, February 15, 1941, the ditch was filled, except about six feet thereof, which was either between the door and the boardwalk or beyond the board-walk toward the rear of the building. The sergeant of the town covered this unfilled portion of the ditch with an old panel door, on which he placed certain boards or scantlings.

Shortly before midnight on February 15, 1941, the plaintiff, as sergeant of the Town of East Rainelle, arrested one McClung for drunkenness, and brought him by auto-mobile to the rear of the jail across the land of the Rainelle Supply Company and the Meadow River Lumber Company, and thence on foot to the door of the jail. After incarcerating McClung, and as the plaintiff stepped from the jail entrance onto this covering of the ditch his left foot broke through one of the panels of the door causing him to fall. He nevertheless made his way to his car and thence to his home where he was treated by a doctor. The next day he was taken to a hospital where an operation for appendicitis was performed. On being discharged from the hospital, he went to Calhoun County, his wife's former home, and thereafter consulted a doctor at Parkersburg, who furnished a brace for his back. He claims to have received permanent injuries to his pelvic bone, his spine and to his hearing and eyesight.

No demurrer to the declaration was interposed, and no plea thereto except that of the general issue. The only errors assigned are that the court erroneously admitted the evidence of plaintiff's wife to the effect that her husband suffered and still suffers greatly, and that the court

did not direct a verdict in defendant's favor, or set aside that in favor of the plaintiff.

The plaintiff's claim is based on the theory that the walkway and approaches to the jail entrance at the point where plaintiff received his injuries constituted a "street or sidewalk or alley" within the meaning of Michie's Code, 17-10-17, by which a municipality is made absolutely liable for injuries received by a person by reason of such street, sidewalk or alley not being in repair; or, in the alternative, that the use of the jail and its approaches, by reason of the arrangement, custom and practice between the two towns was a proprietary, instead of a governmental, enterprise as to the Town of Rainelle, whereby it would be liable for the dangerous condition of the ditch in question by which the plaintiff's injuries were caused.

We are clearly of opinion that this walkway and approaches to the jail entrance did not constitute a "street or sidewalk or alley" within the meaning of the statute mentioned. It was not a street; it was not an alley; and it was not a sidewalk. It was, in fact, a mere walkway from a public highway to the municipal building, and was constructed and maintained solely as a means of access thereto by persons having the right to resort to that building for the purposes for which it was constructed and maintained. The way was not for general travel by all people, to all places, for all purposes, but was for ingress and egress, to and from, a particular place for special and limited purposes. It was of precisely the same character as a walkway leading onto and across a lot owned by a town to a public building thereon. Such a walkway would be, and the one here involved was, simply an appurtenance to the building itself, and partakes of the legal character of the building to which it leads, and which is its excuse for existence, and not of the character of the street from which it extends. *Yochelson* v. *City of New York*, 251 App. Div. 878, 297 N. Y. S. 213; *D'Orsi* v. *City of New York*, 104 Misc. 66, 171 N. Y. S. 203; *Boutet* v. *City of New York*, 199 App. Div. 835, 192 N. Y. S. 608.

The defense of contributory negligence cannot be availed of here. There was substantial evidence both for

and against this issue, and the verdict of the jury precludes us from considering that question. Nor do we find the defendant prejudiced by the admission of improper evidence. The only evidence pointed out as objectionable is that of the plaintiff's wife, who testified that the plaintiff "seemed to be suffering terribly with the back of his head", and was not "able to walk"; that he suffered "constantly" and still suffers from his injury. Testimony closely similar to this was held unobjectionable in *Lawson* v. *Conaway,* 37 W. Va. 159, 16 S. E. 564, 18 L. R. A. 627, 38 Am. St. Rep. 17. We think the evidence complained of was admissible.

But the ultimate question of law in this case is whether, on the facts pleaded and proved, any actionable default by the defendant is shown on which the plaintiff can base a right of recovery. The immunity of municipal corporations against liability for injuries resulting from defective governmental instrumentalities or from their negligent use, is indisputably established. *Carder* v. *Clarksburg,* 100 W. Va. 605, 131 S. E. 349; *Shaw* v. *City of Charleston,* 57 W. Va. 433, 50 S. E. 527, 4 Ann. Cas. 515; *Bartlett* v. *Town of Clarksburg,* 45 W. Va. 393, 31 S. E. 918, 43 L. R. A. 295, 72 Am. St. Rep. 817; *Gibson* v. *City of Huntington,* 38 W. Va. 177, 18 S. E. 447, 22 L. R. A. 561, 45 Am. St. Rep. 853; *Brown's Admr.* v. *Town of Guyandotte,* 34 W. Va. 299, 12 S. E. 707, 11 L. R. A. 121. This immunity extends to and covers acts of a municipal corporation's agents in performing, or failing to perform, duties which are purely governmental. *Gibson* v. *City of Huntington, supra; Douglass* v. *County Court,* 90 W. Va. 47, 110 S. E. 439, 22 A. L. R. 585. It also protects against injuries caused by defective appurtenances to a building used for governmental purposes. 38 Am. Jur., Municipal Corporations, page 304, section 608, and notes; 43 C. J., p. 1166; *Boutet* v. *City of New York, supra; D'Orsi* v. *City of New York, supra.* Therefore, if the plaintiff had been an officer of the Town of Rainelle who had incarcerated a prisoner arrested by him within the corporate limits of that town, the town would have been immune against his claim.

But is the plaintiff's right or the town's liability increased or changed by the fact that the plaintiff was

placing in the town's jail a prisoner arrested by him in another town for the violation of an ordinance of that other town?

No statute defines the rights of towns such as Rainelle and East Rainelle to maintain a prison, either within or without their corporate limits. Code, 8-4-3, authorizes the mayor, on default of the payment of a fine which he has imposed to "commit the party in default to the jail of the county or counties in which such town is situated, or other place of imprisonment in such corporation, * * *." This provision clearly implies, or assumes, that a town has power from some source to maintain a prison within its corporate limits, but casts no light on the question whether the town can maintain or use a jail outside the corporation, other than that of the county. But the plaintiff was the sergeant of the Town of East Rainelle, and as such, he was by statute vested with "all the powers, rights and privileges within the corporate limits of the town in regard to the arrest of persons * * * that can be legally exercised by a constable of a district * * *." Code, 8-4-5. The same section further provides that: "In order to arrest for violation of municipal ordinances and as to all matters arising within the corporate limits and coming within the scope of his official duties, the powers of the sergeant or of any policeman shall extend anywhere within the county or counties in which the municipality is situated." We further find that, by Code, 7-8-1, the right to incarcerate in municipal jails or lock-ups, persons charged with offenses other than the violation of ordinances of such municipalities, is recognized, a right which seems to exist independent of any statute. There seems to be no doubt that a sheriff or constable may have a person arrested and detained in jail until it becomes practicable to deliver him before the proper trial officer. "When officers have made an arrest under a warrant or capias it is their duty to produce the prisoner without undue delay before the official or court that issued the writ. In the meantime the prisoner may be kept in jail." *Floyd* v. *Chesapeake & Ohio Ry. Co.*, 112 W. Va. 66, 164 S. E. 28, 30. See also, *Wiggins* v. *Norton*, 83 Ga. 148, 9 S. E. 607; *State* v. *Shirley*, 233 Mo.

335, 135 S. W. 1; *Kent* v. *Miles*, 69 Vt. 379, 31 A. 1115. In Vorhees on The Law of Arrest, section 204, it is said that: "After an arrest has been made, the next duty of the arresting party is to have his prisoner before a magistrate, in order that the offense with which the prisoner is charged may be inquired into. To this effect the prisoner may be confined in the most suitable place, for a reasonable time, until it is possible for him to be taken before the magistrate." This would seem not to limit the right of incarceration to the jail of the governmental unit on behalf of which the arresting officer is acting. Since a constable has such power, the sergeant or other police officer of a town, by virtue of Code, 8-4-5, possesses like authority.

But it is said that the Town of Rainelle in permitting the use of its jail by the Town of East Rainelle, for which fees were paid, exercised a proprietary function only, and thereby lost its governmental immunity. If the town had permitted the use of this governmental instrumentality for purely private purposes, this argument would be conclusive. 38 Am. Jur., Municipal Corporations, pp. 267-270, secs. 574 and 575, and notes. But we have found no case where the use of a governmental instrumentality has been transformed into a proprietary business by permitting another governmental unit to make use of the same instrumentality for a like public and governmental purpose. We take note of the common practice in this State of the use of jails, county or municipal, by peace officers indiscriminately for the temporary safe-keeping of prisoners under arrest. Code, 7-8-1, authorizes counties to pay certain fees for the temporary use of municipal jails for state prisoners. Does the municipality thereby become engaged in a proprietary enterprise? Code, 7-8-8, requires county jails to be available for federal prisoners for a consideration therein fixed. Does this transform a county jail into a private or proprietary institution? Are the rights of persons and the liabilities of jailers to be different because the prisoners therein were not committed by the governmental unit which maintains the jail? Jails are not of such narrow utility for the governmental units of the state. A constable having a prisoner under arrest for a

like misdemeanor could lawfully have delivered him to the jail and jailer of the Town of Rainelle for detention until he could be produced before a proper magistrate, and the sergeant of a town is given authority equal to that of a constable relating to offenders charged with the violation of a town ordinance. It necessarily follows that it was the legal duty of the jailer of the Town of Rainelle to receive and detain in the jail of that town the person placed therein by the plaintiff in this instance.

The plaintiff had power, under the law, to deliver his prisoner at the defendant's jail for detention, and the defendant, through its jailer, had, under the law, the duty to receive and keep such prisoner in jail. This right and this duty arose, not from any contract, or arrangement, custom or practice voluntarily entered into by the Towns of Rainelle and East Rainelle, but existed by virtue of law. The exercise of these functions by the towns was a governmental act by each, and the jail building and its approaches were governmental facilities or instrumentalities, defects in which cannot give rise to a cause of action in favor of the plaintiff.

It is not necessary to determine whether the jail, by such use by an officer of East Rainelle, became the jail of that town, from the standpoint of the plaintiff. If the jail and jailer must still be considered as being those of the Town of Rainelle, the town's immunity follows as a matter of course. On the other hand, if they are to be treated as the jail and jailer of the Town of East Rainelle, the tort would then be chargeable against that town, and the Town of Rainelle again would be wholly exonerated. In either case, no right of action against the defendant would be shown.

Accordingly, we reverse the judgment of the trial court, and set aside the verdict rendered. And, as it is apparent that, as a matter of law, the plaintiff has no right of action against the defendant arising out of the matters involved herein, the case will be dismissed here.

*Reversed and dismissed.*