WILBURN HAYES *v.* THE TOWN OF CEDAR GROVE, *etc.*

(CC 688)

Submitted April 18, 1944. Decided May 30, 1944.

*Horace S. Meldahl,* for plaintiff.
*Bibby & Good,* for defendant.

Fox, JUDGE:

This is a law action, pending in the Circuit Court of Kanawha County, in which Wilburn Hayes is plaintiff, and The Town of Cedar Grove, a municipal corporation,

created and organized under the laws of the State of West Virginia, is defendant, in which plaintiff seeks to recover damages for personal injuries sustained by him while in the employ of the defendant, and alleged to have resulted from the negligence of his fellow-employees, and failure to provide and to keep in good repair proper equipment for the work being performed. A demurrer to the declaration was sustained in the court below, and its action on said demurrer certified to this Court.

The demurrer goes to the single question of the alleged immunity of the defendant from liability for the acts complained of, it being contended that the declaration on its face shows that the work being performed by the defendant, and out of which plaintiff's injuries arose, was in the exercise of a governmental function. No question is raised as to the sufficiency of the allegations of the declaration in respect to the acts of negligence alleged, and other matters relied upon for recovery. That part of the declaration to which the demurrer is directed, reads as follows:

".. . that heretofore, to wit, on or about the ___ day of May, 1943, the said defendant as such municipal corporation was vested with certain powers, duties and privileges, some of which involved the exercise of obligatory governmental functions, and some of which were optional ministerial acts, and that among the optional ministerial acts which said defendant was entitled to engage in was the collection of trash within the corporate limits of said town from the premises of private citizens and residents, and hauling away and disposing of same, and that after said defendant had previously authorized and arranged for a certain individual or individuals to collect and haul away trash and garbage from the private premises of such town residents and collecting from them authorized fees therefor, and without abrogating or doing away with said arrangements, the said defendant, acting by and through its duly elected and qualified officers and agents, on or about the ___ day of May, 1943, and shortly prior to a general municipal election,

announced publicly and to certain people in particular that it would collect from private premises within the corporate limits of said town the trash of those residents who might place it in containers for such purpose pursuant to said invitation, and haul away and dispose of same without any charge or expense to such residents, and that among the several persons employed by said defendant for the purpose of collecting, hauling away and disposing of said trash was this plaintiff, Wilburn Hayes, which plaintiff, among other things had the work of shoveling the trash, which was brought and dumped by other of said employees onto the bed of the truck furnished by said defendant for said purpose to the front part of the bed of said truck; . . ."

The sole ground of demurrer is set forth in the language following:

"The declaration shows on its face that the alleged acts of negligence of the Defendant which caused the injury of the Plaintiff were committed by the Defendant in the course of the exercise of a governmental function, and the Defendant is consequently immune from liability therefor."

The certification is in the language of the demurrer quoted above. Therefore, there is presented the clear-cut question of whether or not defendant is entitled to avail itself, as a complete defense to the action against it, of the doctrine of immunity against liability, when engaged in a purely governmental function as distinguished from proprietary or ministerial activity. The authorities, in discussing the question, refer to the powers of a municipality as governmental, judicial or discretionary on the one hand; and as proprietary, corporate or ministerial on the other. In this opinion, the two classifications of power will be referred to as "governmental" and "proprietary".

If the defense to the plaintiff's action, raised by defendant's demurrer to the declaration, is sustained, said de-

fense must, in the final analysis, arise out of the common law doctrine of the immunity of the sovereign state and its agencies from civil suits or actions growing out of governmental activities. The immunity as to the State is made absolute, except as to garnishment or attachment proceedings, by Section 35, Article VI of our Constitution. *Stewart* v. *State Road Commissioner,* 117 W. Va. 352, 185 S. E. 567. But the immunity existed at common law. The principle upon which it exists is tersely stated in Shearman & Redfield On the Law of Negligence, 6th Ed., Vol. 2, Section 249, from which we quote:

> "The State is a corporation, and as such may make contracts and may suffer and commit wrongs, and may enforce its rights and redress its injuries by civil action. But as a sovereign power, it cannot be compelled by the process of courts of its own creation, much less by that of other courts, to defend itself from prosecution. Such immunity is placed upon the ground that the general welfare requires that the State should not be deprived or dispossessed of its property without its consent; not on the maxim of the English law that the king can do no wrong, a maxim which has no existence in American law. Any liability therefore, on the part of the State for the negligent acts or omissions of its officers or agents, must be one voluntarily assumed by constitutional legislative enactment, or it does not exist. In a word, the doctrine of *Respondeat superior* does not apply to the State."

See also 43 C. J. (Municipal Corporations), Sections 173, 174, 179, 6 McQuillin on Municipal Corporations, 5th Ed., 1643; *Hill* v. *Boston,* 122 Mass. 344; *City of Richmond* v. *Long,* 17 Gratt. 375; *Jones* v. *City of Williamson,* 97 Va. 722, 34 S. E. 883; *Franklin* v. *Town of Richlands,* 161 Va. 156, 170 S. E. 718; *Hoggard* v. *Richmond,* 172 Va. 145, 200 S. E. 610. The case of *Hill* v. *Boston, supra,* was a case where a child had been injured on account of the unsafe condition of a staircase in a school house provided by a city. The opinion was written by then Chief Justice Gray, afterwards an Associate Justice of the Supreme

Court of the United States, and contains a full and complete resume of the English and American authorities on the subject discussed, and furnishes the background for many subsequent holdings on that question. The opinion is prefaced by the following statement:

> "We had supposed it to be well settled in this Commonwealth that no private action, unless authorized by express statute, can be maintained against a city for the neglect of a public duty imposed upon it by law for the benefit of the public, and from the performance of which the corporation receives no profit or advantage. But, it having been suggested at the argument that the recent opinions of the Supreme Court of the United States tended to a different result, the respect due to that high court, even in matters in which we are not bound by its decisions, has led us to reexamine the foundations upon which our law rests, and, in stating our conclusion, to make fuller reference to the authorities than might under other circumstances have been thought expedient."

The principle stated in the authorities above cited has long been followed in this State. One of the earlier cases was that of *Mendel & Co.* v. *City of Wheeling,* 28 W. Va. 233, in which Judge Johnson reviews the authorities on the question. In *Brown's Admr.* v. *Town of Guyandotte,* 34 W. Va. 299, 12 S. E. 707, it was held, "As to the powers and functions of a town of a public governmental character, it is not liable for damages caused by the wrongful acts or negligence of its officers or agents therein." This was a case where plaintiff's decedent had lost his life in the burning of a jail, and where such burning was attributed to the alleged wrongful acts or negligence on the part of the officers or agents of the town. To the same effect are the cases of *Shaw* v. *City of Charleston,* 57 W. Va. 433, 50 S. E. 527, and the recent case of *Haney* v. *Town of East Rainelle,* 125 W. Va. 397, 25 S. E. 2d 207. In *Gibson* v. *City of Huntington,* 38 W. Va. 177, 18 S. E. 447, it was held, "A municipal corporation is liable for

injuries caused by its negligence in the discharge of or its failure to discharge such duties, as are purely ministerial, not governmental or discretionary." But, "A municipal corporation is not liable for injuries caused by the negligence of its agents and officers in the discharge of or omission to discharge duties, which are purely governmental or discretionary." In *City of Charleston* v. *Beller,* 45 W. Va. 44, 30 S. E. 152, it is stated in the body of the opinion, citing many authorities, that: "In its governmental capacity, a municipality is strictly a branch ·of the State government, within the extent of its limitations, both as to territory and powers granted. And in the discharge of their duties, governmental and discretionary, its officers are public officers, for whose acts the municipality is in no wise liable." In *Bartlett* v. *Town of Clarksburg,* 45 W. Va. 393, 31 S. E. 918, it was held, "As to the powers and functions of an incorporated town of a public governmental character, it is not liable for damages caused by the wrongful acts or negligence of its officers or agents therein." It seems clear, therefore, that a city is not liable for the negligence of its servants and agents when, through them, it is performing a purely governmental function for the benefit of the public. *Douglas* v. *County Court,* 90 W. Va. 47, 110 S. E. 439; *Krutili* v. *Board of Education,* 99 W. Va. 466, 129 S. E. 486; *Boice* v. *Board of Education,* 111 W. Va. 95, 160 S. E. 566; *Webster* v. *Board of Education,* 116 W. Va. 395, 180 S. E. 438; and *Board of Education* v. *Insurance Co.,* 116 W. Va. 503, 505, 182 S. E. 87, apply the same principle to county courts and boards of education, so long as they only engage in purely governmental activities. However, the immunity of the State and its agencies does not always extend to its officers and agents in their private capacity, where, in the performance of their duties, they misuse or exceed their powers. *Clark* v. *Kelly,* 101 W. Va. 650, 133 S. E. 365.

The immunity of a municipality from liability for acts of its officers or agents is confined to situations where it acts in a purely governmental capacity. Many of the activities of municipalities are treated as proprietary, and,

when so treated, liability exists; and this independent of statutes. Strict and absolute liability is held to exist independently of negligence, where they fail to keep their streets and alleys in reasonable repair. Section 17, Article 10, Chapter 40, Acts First Extraordinary Session, 1933; *Patton* v. *Grafton,* 116 W. Va. 311, 180 S. E. 267; *Roth* v. *City of Moundsville,* 118 W. Va. 283, 190 S. E. 332; *Taylor* v. *City of Huntington,* decided at the present term (30 S. E. 2d 14). City parks, playgrounds and swimming pools are held to be proprietary, and liability for negligence in their operation exists. *Warden* v. *City of Grafton,* 99 W. Va. 249, 128 S. E. 375; *Ashworth* v. *City of Clarksburg,* 118 W. Va. 476, 190 S. E. 763. The general principle is that, "A municipal corporation is liable for injuries occasioned by its negligence in the following three cases: (1) Failure to keep its streets, alleys, sidewalks, roads and bridges in repair under the statute;— (2) in the discharge of ministerial or specific duties, not discretionary or governmental, assumed in consideration of the privileges conferred by charter, even though there be the absence of special rewards or advantages;— (3) as a private owner of property to the same extent as individuals are liable." *Gibson* v. *City of Huntington, supra.* See also *Wigal* v. *City of Parkersburg,* 74 W. Va. 25, 81 S. E. 554; *Keene* v. *City of Huntington,* 79 W. Va. 713, 92 S. E. 119; *Hyer Admr.* v. *Town of Ravenswood,* 102 W. Va. 505, 135 S. E. 656. The line of distinction between what is governmental, and what is proprietary, is sometimes difficult to draw and is, in instances relating to parks, playgrounds and swimming pools, more or less arbitrary. In cases covering the operation of water works, power plants, and gas systems, there is no difficulty, and they are clearly proprietary. But we start with this premise: Any activity of the sovereign authority, or one to whom its powers are delegated, is presumed to be governmental; and it follows, we think, that if there be uncertainty as to the classification into which the particular activity falls, the doubt should be resolved in favor of its being governmental rather than proprietary, for the reason that

the usual function of government is to act in the interest of the public as a whole. In such a case, where no profit to the municipality is involved, its acts are governmental. Generally speaking, it is only where it steps aside, and, in a sense, enters a zone of private business, or into activities which may be and frequently are carried on through private enterprises, that its activities become proprietary.

This brings us to the question of whether the removal of trash and garbage by a municipality from its streets and alleys, or the private premises of its inhabitants adjacent thereto, is or is not a governmental obligation or duty. If it is, the demurrer to the plaintiff's declaration in this action must be sustained; but if, in performing such work, the municipality acts in a proprietary capacity, the demurrer must be overruled. In this connection, we call attention to the use of the word "trash" throughout the declaration. In only one sentence are the words "trash and garbage" used and that in the averment that, previous to the act complained of, defendant had arranged for the removal of trash and garbage by an individual for a prescribed compensation for such services to be paid by the persons availing themselves thereof. For the purposes of this case, and dealing with the realities of the situation, we treat the word "trash" and the words "trash and garbage" as legally synonymous. Trash and garbage may not be exactly the same thing, but both are useless refuse, the failure to dispose of which offends the aesthetic sense of the public, and is calculated to render unsafe the health of the community in which either exists. Furthermore, the declaration avers that what the defendant proposed to do was to "collect from private premises within the corporate limits of said town the trash of those residents who might place it in containers for such purpose pursuant to said invitation, and haul away and dispose of same without any charge or expense to such residents", which, to our minds, indicates that what the defendant proposed to do, and did do, was to collect trash and garbage. It would be strange, indeed, if it only in-

tended to remove trash and leave garbage to menace the community. Therefore, we attach no importance to the use of the word "trash" in describing the refuse, which, according to the declaration, it was the purpose of the defendant to remove from the premises of private owners.

The municipality, The Town of Cedar Grove, is a creature of the State, and derives its general powers from, and is controlled by, the provisions of Articles 1, 2, 3, and 4 of Chapter 8 of the Code. Section 10, Article 4, of Chapter 8 of the Code, specifically defines the power it may exercise. In that section it is provided that, among others, it may exercise the power to "regulate the width of sidewalks on the streets, and, subject to the provisions of Article 8 of this chapter, to order the sidewalks, footways and crosswalks to be curbed, recurbed, paved, repaved and kept in good order, free and clean, by the owners or occupants thereof, or of the real property next adjacent thereto"; also to "prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholesome." The provisions of Chapter 56, Acts of 1937, applying to Home Rule Cities, do not, nor can they be made to apply to towns and villages, which by that act are defined as municipalities with a population of two thousand or less. Under that act, all existing charters continue as enacted, until amended, or a new charter substituted. As to cities, such amendment may be made, or a new charter substituted, by a vote of the people entitled to vote thereon; but an amendment to the charter of a town or village can only be made by the circuit court of the county in which it is situated, and in accord with the provisions of Code, 8-2-9. Therefore, the provisions of Chapter 56 aforesaid, conferring powers on Home Rule Cities are, as to towns and villages, only the last expressions of a public policy. But as illustrating this policy, it may be noted that among the powers which a home rule city may exercise are the following: "A city may provide for the elimination of hazards to public health and safety and may define and abate nuisances"; also, "A city may prohibit the accumulation and require

the disposal of garbage, refuse, waste, ashes, trash and other similar matter." Sections 15 and 18, Article 4, Chapter 56, Acts of 1937 (Michie's Code, Serial No. 591, sub-sections 75-78). A town or city which has the power to eliminate or prohibit trash and garbage should, in all reason, have the power to remove the same, where necessary to make effective the powers granted.

Whatever power a municipality possesses to remove from streets and alleys, and from private property adjacent thereto, accumulations of waste, refuse, trash or garbage, is grounded on the assumption that such an accumulation is a menace to the health of the community; and all such power stems from the police power of the State, and is that part thereof delegated by the State to the subordinate agencies it creates. It is difficult to define the extent of the police power.

> "The police power is an attribute of sovereignty and a necessary attribute of every civilized government. It is a general term used to express the particular right of a government which is inherent in every sovereignty. Consequently, it is inherent in the states of the American Union, possessed by every one of them as sovereign, and is not a grant derived from or under any written Constitution. In connection with this latter principle, the point of view has been expressed that the police power is a grant from the people to their governmental agents. It has also been affirmed, however, in discussing the source of the power, that the right of the legislature to exercise the police power is not only not referable to any single provision of the Constitution, but inheres in, and springs from, the nature of our institutions; and so the limitations upon it are those which spring from the same source, as well as those expressly set out in the Constitution. It is very generally regarded not as a delegated, but a reserved, power."

11 Am. Jur., 966. Under our system, this power is vested in the states, existed before the adoption of the Federal Constitution, still remains with the state, and may through

legislative action be delegated by it to municipalities. "The police power of a state is an attribute of sovereignty, co-extensive therewith, difficult of definition because it cannot be circumscribed by mere words, latent in its nature, yet, nevertheless, perennially existing as a vast reservoir of authority to be drawn on by the law-making branch of the government for the public good." *Hinebaugh* v. *James,* 119 W. Va. 162, 192 S. E. 177. For further and recent discussions of the doctrine see *Nulter* v. *State Road Commission,* 119 W. Va. 311, 193 S. E. 549, 197 S. E. 270; *Prager* v. *Chapman & Son,* 122 W. Va. 428, 9 S. E. 2d 880. In *C. B. & Q. Ry. Co.* v. *Illinois,* 200 U. S. 561, 26 S. Ct. 341, 349, 50 L. Ed. 596, Justice Harlan said, "We hold that the police power of a state embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety." So far as we know, the power of the State, under its police power, to provide for the health of its people, has never been questioned, but, on the contrary, has been stressed as one of the powers which may be given the broadest application; and it is common knowledge that this power has been increasingly exercised, in keeping with advances made in the sciences of medicine and sanitation, in recent years. In these circumstances, courts are reluctant to place limits on what may be done in the interest of the health of a community, so long as unreasonable methods are not employed, nor the natural and constitutional rights of citizens invaded.

The police power of the State is vested in the legislative branch of our Government, and may be employed or delegated by it, subject only to the control of the courts, to the extent that they may properly act. While the power as vested in the State is inherent, it is generally held that: "police power which a municipal corporation attempts to exercise must come from the source of the state police power, the state legislature." 37 Am. Jur., 902-5. We think Code, 8-4-10, from which we quote above, delegates to municipalities, organized under general law,

power to take all measures necessary to protect the health of its residents; and that under a reasonable construction of the powers therein granted, the defendant had the right, not only to require the removal of trash and garbage from its streets, alleys and sidewalks, but from lots privately owned and adjacent thereto. Having the right to require such removal, it also had the right to enforce its requirements by its removal of prohibited substances. The argument that a municipality or other governing body, authorized to enforce certain regulations, or to require certain things to be done, can do nothing when its regulations are violated and its requirements ignored, is not convincing. Generally, if not always, the power to require a thing to be done, carries with it the power to do that thing, where necessary to make effective the purpose in mind. The existence of state, county and municipal health organizations, employing hundreds, and perhaps thousands of persons whose business it is, not only to prescribe health regulations, instruct the people in sanitation, hygiene and health, but to do direct and active work in keeping our towns and cities, and our streams and countrysides clean of deleterious substances, calculated to endanger the public health, negatives the idea that, not withstanding its authority under the police power, the state or one of its agencies must stop at regulation, and may not do the work necessary to make its regulations effective, is not, in our opinion, a reasonable application and construction of that power. We think the defendant was within its delegated powers when it employed workers and instructed them to remove trash from premises adjacent to the streets and alleys of the town.

But was this activity on the part of the defendant governmental? We think it was. We have no direct decision of this Court on the question, and there is division in the decisions from other jurisdictions. The nearest this Court has come to the question presented is the case of *Warden* v. *City of Grafton, supra.* Judge Miller, speaking for this Court, said:

"Almost universally, the police, school, health, and fire departments are classed as governmental; while municipally owned water works, gas and electric plants, and street railways are recognized as proprietary. * * * As to the maintenance of sewers, the cleaning of streets and the removal of ashes and garbage by agents or employees of the city, there is again a diversity of opinion in the decisions. * * *"

We recognize that diversity, but we think the clear weight of authority supports the view that the activity of the defendant in the case at bar was governmental, and we believe that position is upheld by reason and logic. We are unable to see under what principle it can be classed as proprietary. The services here performed were free to the inhabitants, and were, apparently, available to all the residents of the municipality. It was an activity in which, as to private property, no private person would be permitted to engage unless authorized by some governmental authority. That it was a measure calculated to guard the public health cannot be questioned, and we know of no principle of law under which it can be held to be anything other than the exercise of a purely governmental power.

The general principles supporting this view are very clearly stated in 6 McQuillin, Municipal Corporations, 2nd Ed., Section 2796:

"It is well settled that a municipal corporation is not responsible for the negligent acts of its employees who are endeavoring to carry out the regulations of the city to promote the public health and to care for the sick and destitute. In the collection and disposition of garbage, undoubtedly the city acts for the public health and discharges a governmental function. In this regard, it is an agent or arm of the commonwealth, and for that reason is absolved from liability for the negligence of its employees. But maintaining a garbage dump near a residence and invading property rights, by creating offensive odors from decaying animal and vegetable matter,

constitutes a damaging or taking of private property without compensation."

In 4 Dillon, Municipal Corporations, 5th Ed., Section 2896, we find the following:

"The power or even duty on the part of a municipal corporation to make provision for the public health and for the care of the sick and destitute, appertains to it in its governmental or public, and not in its corporate, or as it is sometimes called, private capacity. And therefore where a city, under its charter, and the general law of the state enacted to prevent the spread of contagious diseases, establishes a hospital, it is not responsible to persons injured by reason of the misconduct of its agents and employees therein; and, accordingly, the city of Richmond was held not to be liable for the loss of a slave admitted to the hospital of the corporation to be treated for the small-pox, and whom the servants of the city in charge of the hospital negligently suffered, when delirious, to escape, wander off, and die. Within these principles, the enforcement of quarantine, and other health regulations, is a public function, and the city is not liable for the negligence or tortious conduct of its officers and agents in connection therewith."

But this authority recognizes the division of opinion as to whether the removal of ashes and garbage is a governmental activity. In the annotation following the case of *Hoggard* v. *City of Richmond, supra,* 120 A. L. R. 1368, it is stated:

"In a majority of jurisdictions in which the question has arisen, it has been held that the cleaning or sprinkling of streets or the removal of rubbish or garbage by a municipality is a governmental function, designed primarily to promote the public health and comfort, and hence that the municipality is not liable for torts of employees to whom the performance of that function is delegated."

referring to previous annotations on that question. In 38 Am. Jur., 311, it is stated, "The courts differ as to whether the disposition or removal of garbage and refuse constitutes a governmental function within the rule that in the performance of a governmental function a municipality is not liable for the negligence of its officers and employees, but the weight of authority is to the effect that it is a public or governmental function, and that the municipality is not liable for the negligence of the persons employed therein. * * * In some jurisdictions, it is considered that the removal of garbage or refuse is a corporate function to which the benefit to the public health is a mere incident, and that a municipality is liable for the torts of its employees engaged in such work." In the case of *Wichita Falls* v. *Robinson,* 121 Tex. 133, 46 S. W. 2d 965, it was held that "Sanitation for public health of city is 'governmental function'", and, "City is not liable for injuries inflicted through negligence of officers and employees in exercise of governmental function." This was a case where the plaintiff's injury was suffered through the use of disinfectants being used in sanitation work carried on by the city. In *Harris* v. *District of Columbia,* 256 U. S. 650, 41 S. Ct. 610, 65 L. Ed. 1146, it was held, "It is established doctrine that when acting in good faith municipal corporations are not liable for the manner in which they exercise discretionary powers of a public or legislative character. A different rule generally prevails as to private or corporate powers * * *. Application of these general principles to the facts of particular cases has occasioned much difficulty. The circumstances being stated, it is not always easy to determine what power a municipal corporation is exercising. But, nothing else appearing, we are of opinion that, when sweeping the streets, a municipality is exercising its discretionary powers to protect public health and comfort and is not performing a special corporate or municipal duty to keep them in repair. This conclusion, we think, accords with common observation, harmonizes with what has been declared heretofore concerning the liability of

the District of Columbia for torts, and is supported by well considered cases."

The case of *Ashbury* v. *City of Norfolk,* 152 Va. 278, 147 S. E. 223, was a case where plaintiff sued the City of Norfolk for injury sustained under circumstances very similar to those with which we are concerned in the case at bar. The plaintiff was employed by the city to assist in removing garbage which residents had placed in containers, and left them on the sidewalks to be picked up by the city. He was injured through some negligence of his fellow-employees, or some defect in the truck on which he was working, as in our case. The same defense was made there as in the case at bar and the court held that the city was engaged in a governmental activity, and there was no liability on it by reason of plaintiff's injuries, and the alleged negligence of his fellow-employees. The Court held:

> "The performance of duties that relate to the preservation of the public health and care of the sick is of concern to the public as a whole; in executing this function the municipality and the officers through whom it acts perform governmental, or public, as distinguished from mere corporate, or private, duties, for which there is no liability, and the officers and agencies engaged in the performance of such duties are public officers for whose torts the municipal corporation is not responsible."

And further:

> "The removal of garbage by a municipality is a governmental function, which is designed primarily to promote public health and comfort, and hence the municipality is not liable therefor in tort when the negligence which is charged occurred in the performance of that particular function, and no nuisance is thereby created."

It will be noted that the facts considered in the *Ashbury* case closely approximate those alleged in plaintiff's declaration in the case at bar. However, plaintiff would

distinguish them on the ground that in the *Ashbury* case the persons seeking to avail themselves of the services provided for by the city were required, or if not so required did in fact, put their garbage in containers and place them on the edge of the sidewalk; and it is suggested that the matter of street obstruction entered into the picture. It is also claimed that the fact that the garbage was being removed from the street, rather than from private property, as may be the case in the suit at bar, is an important difference as between the *Ashbury* case and this case. We are unable to follow those contentions. The *Ashbury* case was not decided on any theory of street obstruction, but solely on the means employed by the city to protect the public health; and that being the purpose of the city, whether garbage was removed from sidewalks, or from private property adjacent thereto, is wholly immaterial. In any case, the presence of garbage on the streets and sidewalks, or on adjacent property, is equally calculated to endanger the public health; and its removal by the municipality is in the interest of the entire public, and, in our opinion, is a governmental duty. This being true, no liability attaches to the municipality by reason of the negligence, or other misconduct, of its officers and agents, employed to effect such removal.

The contrary rule prevails in the States of Colorado, Illinois, Mississippi and New York; but what we think is the majority and better reasoned rule prevails in the States of California, Georgia, Iowa, Kentucky, Massachusetts, Missouri, North Carolina, New Hampshire, New Jersey, Pennsylvania, Tennessee, Texas, Virginia and Wisconsin. This statement is based upon those contained in *Ashbury* v. *City of Norfolk, supra,* and subsequent decisions of courts of last resort. It would serve no good purpose to analyze the cases from the states mentioned.

Plaintiff, while not admitting that the weight of authority is against his contention, strongly contends that the rule followed by the trial court is unjust and inequitable, and asks us to hold the defendant liable under the facts alleged in his declaration. He calls attention to

the tendencies of the times; to the alleged disposition of courts to widen governmental responsibility in the matter of compensating individuals for injuries suffered while in the employ of government; and the certain disposition of many law writers, law teachers and students of the law in general advocating more liberality in that respect. Whatever may be said for the theory for which the plaintiff contends, loss of immunity of the sovereignty from liability, in its broad application, has not, we think, received the support of the courts; and we question his claim that there is such disposition among the courts of the land. If it exists, we have not been able to find evidence thereof. Be this as it may, believing the doctrine of immunity against liability to be firmly established by the decided weight of authority, in cases where a municipality is engaged in performing governmental functions, we do not think any change in that rule should be lightly made, especially in cases where the result would affect situations far removed from the particular case at hand. As we have stated, the right to delegate the police power of the State is vested in the legislature, and it may grant or withhold such power as it sees fit, or when granted, impose conditions on its exercise. It seems well settled that, as to municipalities, it may provide that they shall be liable for failure to keep their streets in reasonable repair,—clearly a governmental duty; and if it so desires, it could extend that liability to other governmental activities, including those relating to health and sanitation. It has not chosen to do so, and has left the common law intact. Whether it should do so, is clearly and strictly a legislative prerogative, on which this Court is not disposed to encroach. Our function is to apply and interpret legislative enactments—not to enact laws, directly or indirectly. We have no legislative powers, and therefore may not act directly on any matters of legislation. What we are inhibited from doing directly, we should not attempt to do indirectly. This is a sound rule, and should be followed in all situations, especially when the control of the police power of the State, vested in the

Legislature, is involved. Furthermore, the ruling requested would involve wide and sweeping change, and the effect thereof cannot be gauged. If we say the plaintiff is entitled to recover on the facts stated in his declaration, then liability is created, on similar facts, as to every other municipality in this State; and the principal could, and probably would, be extended to every governmental activity of county courts, boards of education, municipalities, and other authorities to which governmental powers are delegated. If such a fundamental change of our present system is thought to be desirable, it should be brought about through legislative action, and after the general public, through its representatives in the Legislature, has had an opportunity to consider the wisdom thereof, and its effect upon the agencies involved.

On the whole, we find no error in the ruling of the Circuit Court of Kanawha County on the certified question, and said ruling is affirmed.

*Ruling affirmed.*