# In the Matter of the Petition of Boswell for Admission to Practice Law.

[No. 22,330.  Filed February 21, 1913.]

1. **Evidence.—***Judicial Notice.—Facts Concerning General Elections.*—The court takes judicial notice that at the general election of 1910, the official state ballots contained the names of candidates for Secretary of State and other State officers to be voted for at that election, and also contained the proposed "Lawyers Amendment" to the Constitution, and it also takes judicial notice of the votes cast and the result of such election from the returns made to the Secretary of State.  p. 294.

2. **Constitutional Law.—***Amendments.—Submission to Voters.—Ratification.*—Under Art. 16, §1, of the Constitution authorizing the legislature to submit proposed constitutional amendments to the electors, and providing that if the majority of the electors shall ratify the amendments the same shall become a part of the Constitution, an affirmative vote of a majority of the electors of the State is required to ratify a proposed amendment, and a proposed amendment which has received a majority of the votes cast on the question, but not a majority of the votes cast at the election, has not only not been ratified but has been rejected.  (State v. Swift [1880], 69 Ind. 505, overruled in part.)   pp. 295, 299.

3. **Constitutional Law.—***Construction of Constitution.*—The court will not bend constitutional provisions by construction to serve convenience.  p. 298.

4. **Constitutional Law.—***Amendments.—Submission and Resubmission to Voters.*—Under Art. 16, §1, of the Constitution the legislature is not required to resubmit, over and over again until a ratification or positive rejection has been obtained, a proposed constitutional amendment which on prior submission failed of ratification, though favored by a majority of the votes cast upon the subject.  (State v. Swift [1880], 69 Ind. 505, overruled in part.)  p. 298.

From Marion Circuit Court (21,855); *Charles Remster,* Judge.

Petition of Charles W. Boswell for admission to practice law, to which written objections were filed. From a judgment refusing to admit petitioner, this appeal is prosecuted. *Reversed.*

*Harry O. Chamberlin,* for appellant

*Addison C. Harris, William A. Pickens* and *Henry H. Hammer,* for appellees.

Cox, J.—Boswell filed a petition in the lower court to be admitted to practice law in that court. Objections to his admission were made and the matter was submitted to the court for trial. As a result of the trial the court refused to admit the petitioner to practice and this appeal is brought. Since November 1, 1851, §21 of article 7 of the Constitution of this State has provided: "Every person of good moral character being a voter, shall be entitled to admission to practice law in all courts of justice." At the general State election in November, 1910, the following proposed amendment of that provision was placed before the electors of the State for adoption: "The General Assembly shall, by law, prescribe what qualifications shall be necessary for admission to practice law in all courts of justice." Acts 1909 p. 501.

It appears from special finding of facts and conclusions of law made and stated by the trial court that the petitioner was possessed of all of the qualifications necessary for admission to practice law under the provision of the Constitution so long in force. The court found that at the election 60,357 votes were cast for the amendment and but 18,494 against it. And it also appears from the conclusions of law stated upon the special finding that the court refused to admit the petitioner solely upon the assumption that the proposed amendment which was submitted to the electors of the State in 1910 had been carried by their votes into the organic law of the State, thus leaving the court free, the General Assembly not having prescribed the qualifications,

to exercise an inherent power to make rules requiring qualifications additional to those prescribed by the original constitutional provision which it had done, and with which the petitioner could not comply. So the sole question before us for decision is whether §21 of article 7 was superseded by the proposed amendment of it voted upon at the general election in 1910.

The joint resolution by which the General Assembly of 1909 sent the proposed amendment to the people for their action provided, ''that the state board of election commissioners be directed to print said amendment upon the official state ballots, to be voted upon at the next general election, as provided by law'' (Acts 1909 p. 501). Section 62 of the general election law of 1889 (Acts 1889 p. 184, §6944 Burns 1908), provides: ''Whenever any constitutional amendment or other question is required by law to be submitted to popular vote, if all the electors of the State are entitled to vote on such question, the state board of election commissioners shall cause a brief statement of the same to be printed on the State ballots, and the words 'Yes' and 'No' under the same, so that the elector may indicate his preference by stamping [marking] at the place designated in front of either word  *  *  *.  In case an elector shall not indicate his preference by stamping [marking] in front of either word, the ballot as to such question shall be void and shall not be counted.''

We know, of course, judicially that at the general election in 1910 the official state ballots on which the amendment was to be placed contained the names of candidates for

1. Secretary of State and other State officers to be voted for at that election. The general election law provides that returns of the result of such an election are to be made to the Secretary of State and this court takes judicial knowledge of the votes cast and the result of such election from those returns. We know therefrom that a total of 627,133 of these official state ballots were marked as required

by law and cast for the several candidates for Secretary of State. All of these ballots contained the amendment in question, but only 60,357 were so marked by the voters as to indicate a vote favorable to the adoption of it, while but 18,494 voters registered by their ballots their opposition to it.

Section 1 of article 16 of the Constitution provides that it shall be the duty of the General Assembly to submit proposed amendments to the "electors of the State; and if a majority of said electors shall ratify the same, such amendment or amendments shall become a part of this Constitution." We are asked by counsel for the objectors to the admission of the petitioner to declare the meaning of this provision of the Constitution relating to its amendment to be, that a majority of those voting on a proposed amendment shall be sufficient to carry it into the organic law. We are asked in this particular case to say that the Constitution may be amended by the affirmative votes of what conclusively appears to be less than one-tenth of the electors of the State. The contention of counsel for the objectors is not new. It has been made and has received full consideration by this court in two preceding cases. *State v. Swift* (1880), 69 Ind. 505; *In re Denny* (1901), 156 Ind. 104, 59 N. E. 359, 51 L. R. A. 722. In both of these cases it was held, against the same contention presented by counsel in this, that the above provision of §1 of article 16 of the Constitution which requires the submission of proposed amendments of that instrument to the electors of the State for ratification, compels an affirmative vote by a majority of the electors of the State to carry new or changed provisions into the organic law of the State.

In *State* v. *Swift, supra,* on page 525, in stating the holding of the court it was said by Biddle, J., who wrote the opinion of the court and who had been a member of the convention which framed the Constitution: "This court holds that it requires at least a majority of all the votes cast at

the same election to ratify a constitutional amendment * * *. It is also held that the Constitution must remain as it was before the amendment was submitted, until it shall affirmatively appear that the amendment is ratified * * *. The opinion, therefore, of this court is, that it requires a majority of the electors of the State to ratify an amendment to the Constitution, but that the whole number of votes cast at the election at which the amendment is submitted may be taken as the number of electors of the State.''

In the latter expression of this court on the question, the Denny case above cited, which involved the question of the adoption of an amendment identical with this, it was said by Baker, J., on page 108: ''In our system of government, a written constitution is the highest expression of law. None other emanates directly from the sovereign people themselves. It is the deliberate and affirmative utterance of the sovereign majority. It seems unnatural to say that the sovereign majority, the authors of the designedly permanent, the fundamental, the organic law, intended that any of its safeguards should be abrogated by a failure to demand the abrogation; that the indifference of the many should be a positive element in effecting an organic change desired by the few; that a judgment abolishing the writ of *habeas corpus* or the right of trial by jury should be taken by default. On the contrary, one would expect a provision that the charter of our liberties should stand unaltered until the sovereign majority, by affirmative action, expressed their desire for, and effected, a change. And such is the clear letter and spirit of article 16. If a majority of the electors of the State shall ratify a proposed amendment, it shall become a part of the Constitution; otherwise not.''

It may be that irreconcilable differences exist between these two cases in other particulars but they do agree in holding that it requires the affirmative vote of the electors of the State to amend the Constitution. To that holding we adhere. It has been considered by this court in the cases

cited that the provision is too plain to carry more than one meaning and that the question in any case is not one of construction but of evidence to determine the number of electors in the State and whether an amendment has received a majority of them. No difficulty in that respect confronts us in this case. As we have seen, the same ballots which contained this amendment also carried on them the names of candidates for all of the State offices to be filled at that election. At the head of them were the names of opposing candidates for Secretary of State and for all of the several candidates for that office there was cast a total of 627,133 ballots. It is thus made manifest that there were at least that many electors in the State qualified to vote on the very day, at the very time and at the same election when this amendment was voted upon; and as it received the affirmative vote of so small a proportion of the ballots actually cast, it is at once obvious that it was not ratified by a majority of the electors of the State. *State, ex rel.,* v. *Brooks* (1908), 17 Wy. 344, 99 Pac. 874, 22 L. R. A. (N. S.) 478 and note.

In *State* v. *Swift, supra,* it was held by the opinion of the court that the amendment in question had been neither ratified nor rejected and it was said that no reason was apparent why it might not be resubmitted to the electors of the State by the General Assembly ''under an amended act such as experience may prove to be sufficient to present the question to the courts, if it ever should arise again.'' The General Assembly of 1881 acted upon this suggestion and resubmitted the amendment involved in that case at a special election (Acts 1881 p. 29).

The proposed amendment now before us, known as the ''Lawyers Amendment'' has been before the legislature for many years and has been three times submitted to the people for definitive action. It has always received the approval of the General Assembly as required by article 16 of the Constitution and each time that it has been submitted to the electors of the State a majority of those voting on the

question of amendment has been cast in favor of the ratification of it; but it has never received a majority of the qualified electors of the State as measured by the number of those voting at the elections at which it was submitted. It is assumed that the statement in *State* v. *Swift, supra,* that the amendment was neither adopted nor rejected and that there might be a resubmission when taken together with the rule requiring a majority of the electors of the state for ratification, serves to keep this amendment awaiting the action "of the electors" within the meaning of §2 of article 16 which provides that "while an amendment or amendments which shall have been agreed upon by one General Assembly shall be awaiting the action of a succeeding general assembly, or of the electors, no additional amendment or amendments shall be proposed." It is further assumed that this "automatically locks" the Constitution against needed amendments, and it is contended that we should declare the true rule to be, under article 16, that only a majority of those voting upon a proposed amendment at a general election shall be sufficient to ratify it. We have had occasion lately to show that the Constitution is not locked by this amendment, or by pursuing constitutional ways for its amendment, or, if it be locked that the people have in their possession the key that unlocks it. If it be locked we have no authority or inclination to break the lock which the Constitution itself provides to open a more expeditious or

3. an easier way of amendment. This court has ever refused to bend constitutional provisions by construction to serve convenience. *Ellingham* v. *Dye* (1912), 178 Ind. 336, 99 N. E. 1, 15, 17; *Greencastle Tp.* v. *Black* (1854), 5 Ind. 557, 565.

Moreover it would seem that what was said in *State* v. *Swift, supra,* would only make an amendment which

4. had received a majority of all of the votes cast for and against it but not a majority of the electors

of the State, an obstruction to the proposal of other amendments, if the legislature chose to treat it as such. It would not be ''awaiting the action of the electors'' unless the legislature had taken the proper action to resubmit. It is true that article 16 makes it the duty of the General Assembly to submit proposed amendments which have been approved by two consecutive General Assemblies, but that constitutional duty is discharged when there has been one submission. The provisions of article 16 do not specifically require a resubmission. If the legislature has the power, it is implied. If it has this implied power, it is difficult to see why it has not also the implied power to refuse to resubmit or even to withdraw amendments from further consideration. There is nothing to indicate an intention to require resubmission over and over again until definite action is secured by ratification or positive rejection by a majority against the amendment.

However, the assumption that the declaration in *State* v. *Swift, supra,* that an amendment which received a majority of the total votes cast for and against but not a majority of the electors of the State was neither ratified nor rejected, controls the situation is not permissible. In the Denny case, which considered the question whether this same ''Lawyers Amendment'' had been ratified at the general election of 1900 at which it was first submitted, it appeared that the amendment had received a majority of all of the votes cast on the question but not a majority of the votes cast at the election and it was held that it had not only not been ratified but had been defeated and rejected. To that conclusion, after due consideration, we adhere and hold that the amendment before us was rejected by the vote at the general election in 1910. The amendment having been rejected the way is clear and open for the proposal of such amendments to the Constitution as the General Assembly may feel that the people demand.

The judgment is reversed with instructions to the trial court to restate its conclusions of law in accordance with this opinion.

NOTE.—Reported in 100 N. E. 833. See, also, under (1) 16 Cyc. 869; (2) 8 Cyc. 723; (3) 8 Cyc. 733. As to matters of common knowledge of which courts take judicial knowledge, see 124 Am. St. 24. As to the construction of a statutory or constitutional requirement that a proposition be decided by a majority or other proportion of the voters, see 13 Ann. Cas. 416.