No. 39,464

THE STATE OF KANSAS, on the Relation of DONALD E. MARTIN, County Attorney of Wyandotte County, Kansas, *Plaintiff*, v. CLARK E. TUCKER, Mayor Commissioner; FRANCIS W. BLAKE, Commissioner of Boulevards, Parks and Streets; EARL B. SWARNER, Commissioner of Finance, Health and Public Property, *Defendants*.

(269 P. 2d 447)

Opinion filed April 10, 1954.

*Donald E. Martin,* county attorney, of Kansas City, argued the cause, and *Donald A. Hardy,* assistant county attorney, of Kansas City, was with him on the briefs for plaintiff.

*C. W. Brenneisen, Jr.,* city attorney, of Kansas City, argued the cause, and *Joseph A. Lynch, William H. Towers, John J. Ziegelmeyer,* and *James J. Lysaught,* all deputy city attorneys, of Kansas City, were with him on the briefs for defendants.

The opinion of the court was delivered by

HARVEY, C. J.: This original proceedings in quo warranto brought by the state questions the constitutionality of section 1, chapter 83, Laws 1953 (1953 Supp. G. S. 1949, 13-1024) which amended G. S. 1949, 13-1024. The section amended and the amending section are alike in part and differ in part. We print them here putting in parentheses the language omitted from G. S. 1949, 13-1024, and in italics the new language added by the amendment (section 1, chapter 83, Laws 1953) as follows:

"13-1024. *Loans and improvement bonds generally; bond election, when.* For the purpose of paying for any bridge, viaduct, public building, including the land necessary therefor, for lands for public parks and developing the same, within or without the city, for the establishment and construction of crematories, desiccating or reduction works, including the land necessary therefor, within or without the city, or for the improvement, repair or extension of any waterworks, sewage disposal plant, electric light plant, crematory, desiccating or reduction work or other public utility plant owned by the city (unless otherwise specially provided for or for any other improvements or works not otherwise herein provided for), and for the purpose of rebuilding, adding to· or extending to the same from time to time, as the necessities of the city may require, the city may borrow money and issue its bonds for the same; (but) *Provided,* That no bonds shall be issued for such purposes unless the same (are) *were* authorized by a majority of the votes cast at an election held for that purpose: (*Provided, however,* That cities of the first class having a population in excess of one hundred thirty thousand, may and are authorized to issue the bonds of such city for the purpose of paying for any of the improvements mentioned in this section and the land necessary therefor, without such bonds having been authorized by a vote of the people, but the total amount of bonds issued for such purposes shall not exceed the sum of seventy-five thousand dollars in any one calendar year; *Provided further,* That of such seventy-five thousand dollars, not to exceed fifty thousand dollars may be issued in any one year for all purposes above mentioned, other than bridges, including the land necessary therefor. The city shall make provision for the redemption of all bonds at their maturity.) *Provided, however, That cities of the first class having or who may hereafter have a population in excess of one hundred twenty thousand (120,000) and less than one hundred sixty thousand (160,000) may and are authorized to issue the bonds of such city for the purpose of paying for any of the improvements mentioned in this section and the land necessary therefor without such bonds having been authorized by a vote of the people: Provided, That before any bonds may be issued under the provisions of this act without an election, the city shall adopt a resolution, finding and declaring it necessary to issue such bonds, which resolution shall state the purpose for which said bonds are to be issued and the maximum amount of bonds to be issued, and which resolution shall be published for three consecutive days in the official paper of the city, and if within thirty (30) days after the date of the last publication of said resolution, a protest, signed by not less than five percent (5%) of the elec-*

*tors shown by the registration books of the city is filed with the city clerk, the improvement shall not be made, nor bonds issued, unless the governing body calls an election within the time and manner provided by section 10-120 of the General Statutes of 1949 and amendments thereto, and the proposition shall receive the favorable vote of a majority of the votes cast on the proposition. The resolution shall contain a statement relating to the provision for protest."*

It is evident the sole purpose of section 1, chapter 83, Laws 1953, was to make it unnecessary for any city of the first class in the state which has a population of more than 120,000 and less than 160,000 to have an election for the issuance of bonds for any general improvement purpose, unless a protest was filed with the city clerk within thirty days of five percent of the electors. There are twelve first-class cities in the state; only one of them, Wichita, with a population of 192,182, has a population in excess of 160,000. There is no likelihood its population will ever be decreased to less than 160,-000. Kansas City, in 1953, had a population of 126,886. The next largest city in Kansas is Topeka which has a population of 82,734. In the twenty years prior to 1953 it has gained in population at the rate of approximately 1,000 per year. At that rate it would take it approximately thirty-seven years to have a population of 120,000. Each of the other cities of the first class has a population of less than 35,000. So, the only city that would be affected by the second proviso of section 1, chapter 83, Laws 1953, would be Kansas City. The statute in question is attacked as being invalid under article 2, section 17, of our constitution, which reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

A law of a general nature could have been framed for the issuance of bonds for all general municipal purposes for cities of the first class. In fact, this statute would have been so had it not been for the second proviso therein. We think the proviso inserted therein provides only for Kansas City just as definitely as though it had named that city. See, *City of Topeka v. Gillett*, 32 Kan. 431, 4 Pac. 800. Had the statute named Kansas City alone as the city to which the proviso applied it would have been held void.

Counsel for defendant argues that heretofore this court has approved classifications of cities on the basis of population. This is true, but whatever ground is used to classify one or more cities from others must be upon some ground germane to the purpose of

the legislation. Here no reason is pleaded as to why Kansas City should have a different method of issuing its bonds than the other eleven cities of the first class. It seems clear the statute in question violates article 2, section 17, of our constitution.

The validity of the statute is also attacked as violating article 12, section 1, of our constitution, which reads:

"The legislature shall pass no special act conferring corporate powers. Corporations may be created under general laws; but all such laws may be amended or repealed."

It is well settled in this state that municipal corporations are corporations within the meaning of this section of our constitution. See, *City of Wyandotte v. Wood,* 5 Kan. 603, 607. If this is a special act attempting to confer corporate powers on the city of Kansas City it is invalid. We think it is.

Naturally, if the second proviso is bad the third proviso goes with it.

There is not much more necessary to be said about this case. We have examined all the authorities cited by counsel and many more but deem it unnecessary to prolong this opinion.

Judgment will be entered for the plaintiff.

SMITH, WEDELL and PARKER, JJ., dissenting.