In the matter of the appeal of the Town of Pine Bluffs, Wyoming, from the order, findings and opinion of the State Board of Equalization in the matter of the objections of various Wyoming municipalities (protestants) to the valuation and assessment of their electric utility properties by the State Board of Equalization for the State of Wyoming for tax purposes for the year 1957. State Board Case No. 301. (And 11 other cases consolidated for trial as shown by Order of February 25, 1958.)

*Appellants*

(Petitioners below)

vs.

The State Board of Equalization of the State of Wyoming

*Appellee*

(Respondent below).

(No. 2867; December 16, 1958; 333 Pac. (2d) 700)

264

For the appellants the cause was submitted upon the briefs and also oral argument of Joseph F. Maier of Torrington, Wyoming, and D. N. Sherard, of Wheatland, Wyoming.

For the appellee the cause was submitted upon the briefs and also oral argument of Honorable Thomas O. Miller, Attorney General, and Ralph M. Kirsch, Special Assistant Attorney General, both of Cheyenne, Wyoming.

Heard before Blume, C. J., and Harnsberger and Parker,JJ.

## OPINION

Mr. Chief Justice BLUME delivered the opinion of the court.

This case involves the question as to whether or not the property of electric light plants owned by municipalities in this state is taxable in accordance with Ch. 49, S. L. of Wyoming, 1957.

The property of twelve municipalities in the state is involved herein, namely, the property of the following towns: Pine Bluffs, Torrington, Wheatland, Cody, Basin, Lusk, Gillette, Powell, Lingle, Upton, Guernsey and Fort Laramie.

The municipalities involved herein each own and operate an electric light and power plant. On January 18, 1957, the State Board of Equalization notified the appellant municipalities by letter that it intended to value and assess their respective light and power plant properties for 1957 for ad valorem tax purposes, and the board requested the municipalities to furnish reports of their properties in accordance with the provisions of Ch. 32, Art. 12, W.C.S. 1945, and Ch. 49 above mentioned. The appellants submitted the reports as requested under protest. These municipalities set forth the various portions of electrical energy which are sold and which are used by them to pump their municipal water supplies, light their streets and alleys, swimming pools, golf courses, baseball diamonds, playgrounds, city halls and other municipally owned installations and recreational facilities, to operate the traffic control systems and for other municipal purposes. The appellants initially acquired or constructed their respective utility systems with capital funds arising out of the issuance and sale of general obligation bonds and these bonds were retired out of both operating revenue and by tax levies. The increase

in their municipal plants has been mainly or entirely out of the sale of electricity to the various individuals in the municipalities.

After the reports were submitted in accordance with the requirement by the State Board of Equalization, the appellants filed resolutions adopted by their municipal officials with the State Board of Equalization protesting these valuations. Thereupon the board set these objections down for hearing on June 26, 1957. The appellants appeared at this hearing and objected to the jurisdiction of the board and its power to assess for ad valorem taxes their respective municipal plants. On September 20, 1957, the board entered an order overruling and denying the protests and objections of the appellants and made an assessment against their properties in accordance with Ch. 49, supra. The appellants thereupon took appeals to their respective district courts. Changes of venue were taken in each case to the District Court of Laramie County, Wyoming. All of the cases were consolidated for hearing and the case was heard in the District Court of Laramie County, Wyoming, with the Honorable Allen A. Pearson, Judge, presiding. The case was heard before the court, and on April 29, 1958, the action of the State Board of Equalization was affirmed, whereupon an appeal was taken to this court.

Prior to the election in 1956, it was provided by Art. 15, § 12 of the constitution of this state as follows:

"The property of the United States, the state, counties, cities, towns, school districts, municipal corporations and public libraries, lots with the buildings thereon used exclusively for religious worship, church parsonages, public cemeteries, shall be exempt from taxation, and such other property as the legislature may by general law provide."

In the session of the legislature of 1955 an amend-

ment of this section of the constitution was proposed and passed by the requisite majority in the legislature to read as follows:

"The property of the United States, the State, counties, cities, towns, school districts and municipal corporations, when used primarily for a governmental purpose, and public libraries, lots with the buildings thereon used exclusively for religious worship, church parsonages, church schools and public cemeteries, shall be exempt from taxation, and such other property as the legislature may by general law provide."

This proposed amendment to the constitution was submitted to the people of the state in 1956 and adopted by them, as hereafter stated.

The legislature of this state in 1957 enacted Chs. 49 and 165, S. L. of Wyoming, 1957, which will be discussed hereafter.

1. It is contended that the amendment to Art. 15, § 12, of the constitution of this state submitted to the vote of the people in the general election in 1956 was not adopted inasmuch as the majority of the electors in the state did not vote in favor thereof. The contention is based on the fact that though only 125,574 of the electors voted in the election in 1956 there were more qualified electors than that number and appellants attempted to show that there were more qualified electors in the state than that. Counsel rely upon what was said in the case of State ex rel. Blair v. Brooks, 17 Wyo. 344, 99 P. 874, 875, 22 L.R.A.N.S. 478. In that case it was said that the term "elector" "includes, not only those who vote, but those who are qualified, yet fail to exercise the right of franchise." However, in that case the court, in deciding that the amendment in question in that case was not adopted, took as a basis the number of electors who actually voted in the election. It is, of course, almost impossible to deter-

mine the actual number of qualified electors at a particular election, and we must give some reasonable interpretation to the term "elector". In the case of State v. Swift, 69 Ind. 505, 526, the court said:

"* * * The opinion, therefore, of this court is, that it requires a majority of the electors of the State to ratify an amendment to the constitution, but that the whole number of votes cast at the election at which the amendment is submitted may be taken as the number of electors of the State.

"* * * The practical meaning of the phrase 'all the electors of the State' is that substantial number who vote at general state elections, and the number whose votes is officially returned by sworn officers, into the office of the Secretary of State. This number need not necessarily include electors who are sick, absent from the State, or prevented from going to the polls. The construction must be such as has a sensible application to the affairs of men, rather than one of abstract numbers or theory.* * *"

The same position was taken in the case of In re Boswell, 179 Ind. 292, 100 N.E. 833. See to the same effect the case of State ex rel. Hayman v. State Election Board, 181 Okl. 622, 75 P.2d 861.

In the case at bar the total number of votes cast in the election of 1956 was 125,574. The electors voting in favor of the amendment numbered 73,321 and the votes cast against it were 41,959. Accordingly, we think that the amendment was legally adopted and the foregoing contention must be overruled.

2. It is further contended that the constitutional amendment was not fairly adopted in view of the misleading statement accompanying the submission thereof to the electors in the last sentence thereof and that hence the constitutional amendment should not be considered to have been adopted. Section 16-202, W.C.S. 1945, provides in part as follows:

"The Secretary of State * * * shall indorse upon each proposed amendment so received a brief statement of the subject or subjects to which it relates. In case the bill or resolution proposing such amendment shall designate a form of such statement, the form so designated shall be adopted by the Secretary of State in making his indorsement.* * *"

The Original House Joint Resolution No. 2 provides in part as follows:

"The following statement shall be indorsed on the foregoing proposed amendment by the Secretary of the State of Wyoming:

"This proposed amendment to the Constitution of the State of Wyoming allows property of the Federal, State and political sub-divisions thereof, to be subject to taxation in the event that such property is being used for purposes other than governmental, in order that non-governmental activities upon governmental lands can bear their fair share of the tax burden within this State."

It is true that the Secretary of State literally complied with this provision and with the statute aforesaid, but that does not dispose of the question. The last sentence of the accompanying statement reading "in order that non-governmental activities upon governmental lands can bear their fair share of the tax burden within this State" may possibly be misleading to an elector insofar as taxing municipally owned electric light plants is concerned, and it is a disturbing thought that an amendment to the constitution may have been adopted through a misstatement. To tax activities upon governmental land is a far cry from taxing municipally owned electric light plants. If the members of the legislature from counties in which municipally owned electric light plants are situated had known that there was a possibility of taxing these

plants, they might not have voted for the submission of the proposed amendment. Had the people of Torrington and a dozen other municipalities known that their electric light plants could be taxed, they might not have voted for the amendment, and its adoption might have failed. However, we are dealing here in conjecture. We must assume that the people of the state voted intelligently. The first part of the statement accompanying the proposed amendment clearly states that property of political subdivisions of the state might be taxed if used for purposes other than governmental. Taxation of a municipally owned utility or municipally owned electric light plant is only one of the matters affected by the constitutional amendment. We hesitate to overturn the vote of some 73,000 people out of some 125,000, which votes were apparently deliberately cast in the election of 1956, particularly in view of the fact that it is within the power of the legislature, if it chooses, to exempt the property of municipally owned electric light plants in an enactment hereafter passed. After considering the matter very carefully we have concluded that we should and we do overrule the objection here considered.

3. It is contended that when the State Board of Equalization undertook to tax the property of municipally owned electric light plants it violated Art. 3, § 37, of the constitution of this state reading as follows:

"The legislature shall not delegate to any special commissioner, private corporation or association, any power to make, supervise or interfere with any municipal improvements, moneys, property or effects, whether held in trust or otherwise, to levy taxes, or to perform any municipal functions whatever."

The objection must be overruled. The State Board of Equalization is neither a special commissioner nor

a private corporation nor an association within the meaning of the above provision. It is a board recognized by the constitution of this state in Art. 15, §§ 9 and 10. We construed the above constitutional provision in Stewart v. City of Cheyenne, 60 Wyo. 497, 154 P.2d 355. A perusal of that opinion will show, we think, that it cannot apply in a case such as before us. The main purpose of the provision seems to be to leave the control of municipal functions in the hands of the duly elected officials in the municipality. The levy of taxes referred to in the provision is, we think, the levy for the municipality of local taxes for local purposes, and has no connection with the ad valorem taxes to be assessed by the State Board of Equalization. It is stated in 84 C.J.S. Taxation § 202 that while an intent to tax property devoted to public or governmental purposes will not be implied, yet "in the absence of any constitutional prohibition, a state has power to tax the property of its cities, counties, and other political subdivisions". See also 2 Cooley, Taxation, 4th ed., § 621. We borrowed Art. 3, § 37, supra, from Pennsylvania. Yet it was held in Commonwealth v. City of Harrisburg, 335 Pa. 202, 6 A.2d 863, that bonds of municipal corporations are taxable for state purposes. The same must be true as to municipally owned electric light plants insofar as consistent with the amended constitution involved herein.

4. It is contended that Ch. 165, § 1 [§32-102 (E) (6)], S. L. of Wyoming, 1957, constitutes an unlawful delegation of taxing power. The legislature provided for exemptions from taxation of certain publicly owned property including that in cities and towns. The provision in connection with municipalities will be mentioned more fully hereafter. Subdivision (E) (6), supra, provides that the State Board of Equalization may exempt from taxation "Other property of cities

and towns which the State Board of Equalization shall determine, upon competent evidence, is used for a governmental purpose". As stated, it is contended that this constitutes an unlawful delegation of the taxing power. The statute sets a standard, namely, that the property must be used for governmental purposes. The board must find the facts. If its conclusion under these facts is wrong, it is doubtless reviewable by the courts so that it is at least doubtful that there is an unlawful delegation of power. In any event, it is difficult to see that this question is involved herein. The board has not determined that there is any property, not enumerated in the statute, which is used for a governmental purpose. It is true that it has determined that certain property — municipally owned electric light property—is *not used* for a governmental purpose, but that is another question. It arrived at that conclusion merely by interpreting the amended constitution and the statutes of this state. Hence, the question here involved is merely as to whether or not its interpretation is correct—a point to be determined hereafter. We think that no question of unlawful delegation of power as contended is involved herein.

5. The constitution of this state, Art. 15, § 12, heretofore set out, before the amendment of 1956, exempted, among other property, the property of incorporated cities and towns of the state. Section 32-102, W.C.S. 1945, prior to the amendment thereof in 1957, also exempted from taxation the property of incorporated cities and towns. Section 32-1204, W.C.S. 1945, provided for returns for taxation and for assessment thereof of property of each public utility in the state, but the end of the section contains this provision:

"* * * provided, that this section shall not be construed to apply to the assessment and equalization of

the property of any utility owned by an incorporated town, city or village."

Assuming that this statutory proviso had the same effect as the statutory provision of § 32-102 heretofore mentioned, it has at least no greater effect. It is the contention of appellants herein that the proviso of § 32-1204, supra, is still in force and effect and that it has not been repealed and that, hence, the act of the State Board of Equalization in 1957 assessing the property of electric light plants is unlawful and should be set aside. That is perhaps the most important question in this case.

The question before us is not as clear as it should be. The legislature left it in a state of uncertainty and confusion. If the property of municipally owned electric light plants is taxable at all, it must be by reason of the enactment in 1957 of Chs. 49 and 165, supra, which will be considered hereafter. The legislature should have specifically repealed the proviso in § 32-1204, W.C.S. 1945, if it wanted to do so, or it could have stated in Ch. 165 above mentioned that the following property of cities and towns should be exempt and *no other*, if that was the intention. It should have stated in Ch. 49 above mentioned that not alone private but also public corporations were intended to be covered by the chapter. It did not do so, and it is not without some qualms that we have arrived at the conclusion hereafter mentioned. We have done the best we could in arriving at the intention of the legislature and bearing in mind the fact that the legislature, soon to convene, can definitely determine as to whether or not municipally owned electric light property should be taxed.

Section 32-102, supra, was amended by Ch. 165, S. L. of Wyoming, 1957. That amendment provided

for exemptions of property of the United States and the state, with certain exceptions, property of counties, school districts and cities and towns. It exempted the following property of cities and towns in the following terms:

"(E) The property of the cities and towns of the State of Wyoming used for the following purposes:

"(1) Streets and alleys and all property of cities and towns used for the construction, reconstruction, maintenance, and repair thereof.

"(2) All property used for the furnishing of sewer and water services (even though service and maintenance charges are made therefor).

"(3) City or town halls, police stations, police and law enforcement equipment, traffic control equipment, fire stations, fire fighting equipment, garbage collection and disposal equipment, together with lands and buildings used for the servicing and repair of such equipment.

"(4) City or town parks, airports, city and community auditoriums, cemeteries, golf courses, and playgrounds, provided such parks and playgrounds and all other recreational facilities which are maintained directly by employees of the particular city or town; and further providing that any charges or admission for the use of said parks or playgrounds are equal to or less than the cost of maintenance.

"(5) All motor vehicles and personal property used exclusively for the care, preservation and administration of city property.

"(6) Other property of cities and towns which the State Board of Equalization shall determine, upon competent evidence, is used for a governmental purpose."

The amendment of 1957 of § 32-102, W.C.S. 1945, seemingly intended to cover the whole subject of exemptions of publicly owned property, covering as it does all property of the United States, the state, counties, school districts and cities and towns. It is said in the case of City of Hartford v. Hartford Theological Seminary, 66 Conn. 475, 34 A. 483, 485, as follows:

"* * * It is a familiar rule that, when a later statute is exclusive,—that is, when it covers the whole subject to which it relates,—it will be held to repeal by implication all prior statutes on that matter, whether they are general or special.* * *"

In 50 Am.Jur. Statutes § 558, p. 561, it is stated:

"* * * where a statute is intended to cover all the ground of prior ones on the same subject, and revises the entire law on such subject, all prior conflicting laws will be repealed, even though they are special acts.* * *"

In Homer v. City of Fall River, 326 Mass. 673, 96 N.E.2d 152, 154, the court stated as follows:

"Although ordinarily the repeal of a statute by implication is not favored by the law, see Commonwealth v. Bloomberg, 302 Mass. 349, 352, 19 N.E.2d 62, and cases cited; Brown v. City of Lowell, 8 Metc., Mass., 172, it is a recognized principle 'that the enactment of a statute which seems to have been intended to cover the whole subject to which it relates, impliedly repeals all existing statutes touching the subject and supersedes the common law.' * * *"

Numerous cases are cited. In 84 C.J.S. Taxation § 222, it is said that the statute of exemption is repealed "by a statute intended to cover the whole subject of exemptions from taxation which does not include the particular property in any of the exempted classes."

This seems to be a universally recognized rule. See 82 C.J.S. Statutes §§ 292, 293, and the lengthy Annotation, 88 Am.St.Rep. 271, 278, in which it is said:

"* * * there is another case in which an implied repeal results, although there be no repugnancy in express terms. This is where the later act covers the whole subject of the first, and contains new provisions showing that the legislature intended it as a substitute.* * *"

We have another rule which in effect is similar to the rule already mentioned as applied to this case, namely:

"* * * where a statute enumerates the subjects or things on which it is to operate, or the persons affected, or forbids certain things, it is to be construed as excluding from its effect all those not expressly mentioned * * *." 82 C.J.S. Statutes § 333.

This is the familiar rule of "Expressio unius est exclusio alterius". In the case at bar, Ch. 165, supra, enumerates the publicly owned property which shall be exempt, bringing into operation the foregoing rule, namely, that the property not enumerated shall not be exempt. This rule is particularly emphasized by the fact that in subdivision (E) (2), supra, sewer and water lines which charge for the service and maintenance thereof are exempt. The electric light plants in question here make similar charges and since these are not specifically mentioned they would seem to be excluded. Furthermore, subdivision (E) (6), supra, provides that the State Board of Equalization might upon competent evidence determine that other property of cities and towns could be exempt if used for a governmental purpose. In other words, Ch. 165, supra, appears to mean that so far as possible no pub-

lic property except that used for governmental purposes shall be exempt.

We think, accordingly, that we must conclude that the proviso in § 32-1204, supra, was, under the rules above mentioned, repealed by implication so that the property of electric light plants owned municipally is not exempt from taxation except as hereafter mentioned.

Ch. 165, supra, is a statute providing for exemptions. Appellants argue that in order to make municipally owned property taxable there must be a positive statute which does that. Assuming that to be true, we must turn to Ch. 49, supra. In that connection it is argued by appellants that publicly owned property is presumed to have been excluded from a taxing statute. See 2 Cooley, Taxation, 4th ed., § 621; 84 C.J.S. Taxation § 202. However, it is said in 84 C.J.S. Taxation § 204: "There is no implied immunity from taxation of property owned by a municipal corporation which is * * * held by the municipality in its private or commercial capacity and as a source of profit."

Ch. 49, supra, provides for the taxation and valuation of property of electric utilities. In § 1(b) it is provided that:

" 'Electric utilities' shall be construed to include all persons, corporations, cooperatives, and associations, engaged in the distribution, transmission and/or generation of electric energy within this State."

The question before us is as to whether or not municipalities are included within this provision. A municipality is hardly a "person" or a cooperative or an association. Is it a corporation within the meaning of that term in Ch. 49? In Wyoming Coal Mining Co.

v. State ex rel. Kennedy, 15 Wyo. 97, 87 P. 337, 984, 985, 123 Am.St.Rep. 1014, the court held that the word "corporation" included public, quasi-public and private corporations. That was also held to be true in the cases of City of Lakeland v. Amos, 106 Fla. 873, 143 So. 744; Sumid v. City of Prescott, 27 Ariz. 111, 230 P. 1103; State ex rel. Martin v. Tucker, 176 Kan. 192, 269 P.2d 447; and Murphy v. Board of Chosen Freeholders of Mercer County, 57 N.J.L. 245, 31 A. 229. Numerous authorities are to the contrary. See 9 Words and Phrases, Corporation, "Municipal or quasi public corporations", and 1 McQuillin, Municipal Corporations, 3d ed., § 2.16. So it would seem that it is hardly possible to lay down a uniform rule, and each case depends, perhaps, on its own facts. Let us examine the situation in this case.

We must construe Ch. 49 in pari materia with Ch. 165. We have seen that municipally owned electric light property is not exempt under that chapter. It is hardly likely that the legislature at the same session meant to state the contrary in Ch. 49. Furthermore, Ch. 49, § 1 (c), mentions the operating revenues of *all electric utilities*. Section 2 speaks of "each electric utility" and mentions "each respective utility". Section 5 provides:

"The State Board of Equalization is hereby empowered to require *all* electric utilities to furnish such information as the State Board of Equalization may require to establish the valuation adjustment factor herein provided." (Emphasis supplied.)

These provisions seem to indicate that the statute intended that the property of all electric light plants should be taxable whether public or private. Furthermore, Ch. 49, § 6, provides:

"Provided that nothing in this Act shall apply to an electric utility operating in any county in which less than ten per cent (10%) of the real property by area is assessed for ad valorem taxation."

The chapter as originally introduced in the legislature contained no such provision. Hence, special attention was called to the fact that *one* exemption was made in the statute and it would seem that if another exemption was contemplated—namely, the property of municipally owned electric light property—such additional exemption would have been expressly mentioned. In the absence thereof we should, we think, again apply the rule of "Expressio unius est exclusio alterius".

We think we are constrained to conclude that the property of the appellants herein is not exempt from taxation except only the property hereafter mentioned.

6. It is the contention of appellants that to furnish electric light and power to the people of a municipality is a governmental function. The contention is not without authority. Chadwick v. City of Crawfordsville, 216 Ind. 399, 24 N.E.2d 937, 129 A.L.R. 469. It is said that in a certain sense any municipal function might be regarded as governmental and to a large extent the determination of what are and what are not purely governmental duties can be settled only by the facts of a particular case. 62 C.J.S. Municipal Corporations § 110, pp. 244, 245. The purpose for which a municipal activity is claimed to be governmental or otherwise has a bearing on the point. Perhaps counsel for appellants are right when they point out that cases holding that a municipality can be held liable for negligence for a certain municipal activity do not necessarily determine whether for other purposes the activity can or cannot be held to be governmental. In

the case at bar, we are not dealing with tort liability but merely with the question of taxation. We cannot disregard the fact that the provision of the former constitution to the effect that property of a municipality should be exempt from taxation has been left out of the amendment thereof. Ownership of property by a municipality is no longer in itself sufficient to exempt it from taxation (unless the legislature makes it so). It must be used for a governmental purpose. The amended constitution clearly indicates that a distinction is sought to be made between such purpose and some other purpose. That a line of demarcation can be drawn is clear. Confining our discussion to the point here involved, the sale of electricity by a municipality presents a situation different from one when no sale takes place. We think that by the weight of authority such sale is proprietary and not a governmental function.

In City of Chicago v. Ames, 365 Ill. 529, 7 N.E.2d 294, 109 A.L.R. 1509, the court held that the production of water, gas or electricity for a municipal purpose is within the scope of governmental function, but when the municipality goes into the business of furnishing these commodities it then acts in a private capacity. That seems to be the general rule. Board of Councilmen of City of Frankfort v. Commonwealth, 26 Ky.L.Rep. 957, 82 S.W. 1008; Bay City v. State Board of Tax Administration, 292 Mich. 241, 290 N.W. 395; City of Newport News v. Warwick County, 159 Va. 571, 166 S.E. 570, 167 S.E. 583; City of Providence v. Hall, 49 R.I. 230, 142 A. 156; Harvard Furniture Co., Inc., v. City of Cambridge, 320 Mass. 227, 68 N.E.2d 684; Hayes v. Town of Cedar Grove, 126 W.Va. 828, 30 S.E.2d 726, 156 A.L.R. 702; Hooten v. City of Burley, 70 Idaho 369, 219 P.2d 651; City of Bessemer v. Personnel Board for Jefferson County,

240 Ala. 411, 199 So. 815; State ex rel, Becker v. Smith, 144 Kan. 570, 61 P.2d 897. In the case of City of Phoenix v. State ex rel. Conway, 53 Ariz. 28, 85 P.2d 56, 58, the court said:

"* * * It would seem that when municipalities become competitors with private enterprise they should be treated no better than others operating in the same field. The general rule is that municipalities are subject to the same liabilities as private corporations, or individuals, except when they are exercising purely governmental functions.* * *"

In Bay City v. State Board of Tax Administration supra, the Michigan court stated as follows at 290 N. W. 400:

"It is only fair to assume that as a matter of public policy the Michigan legislature in enacting the statutory provisions here involved sought in a measure to protect private industry and private employment by keeping them, so far as taxation is concerned, on a parity with municipally owned utilities which, going outside the performance of purely governmental functions, become competitors of others privately engaged in like activities. When municipal utilities so function they should be governed by and subject to the same rules as private individuals or business corporations, at least so far as taxation is concerned.* * *"

We might say, incidentally, that notwithstanding what this court may have said heretofore, it may well be for the purpose of taxation at least that when a municipality furnishes water to its inhabitants it may be said to be acting in a governmental capacity in view of the fact that water is essential to health as well as to life itself. That, however, is not involved in this case and in view of what we have said, we think that we must overrule the contention here discussed excepting insofar as mentioned below.

In the case of Village of Swanton v. Town of Highgate, 81 Vt. 152, 69 A. 667, 668, 16 L.R.A.N.S. 867, it is said that to furnish light for the streets "is distinctively a public service, as it benefits the people, conserves the public peace, and protects both persons and property, for darkness invites disorder and encourages crime." In Schlicher v. City of New York, 175 Misc. 696, 24 N.Y.S.2d 177, affirmed, 264 App. Div. 763, 35 N.Y.S.2d 716, it was held that street lighting is a governmental function, and in Martin v. City of Canton, 41 Ohio App. 420, 180 N.E. 78, it was held that the erection and maintenance of electric lights at street intersections for regulation of traffic is a governmental function. We, accordingly, think that insofar as the appellants herein furnish electricity for the purpose of lighting streets and directing traffic that is a governmental function and should be exempt from taxation. We think the same should be said in connection with the lights furnished for offices occupied by city officers. Should we go further? It seems somewhat anomalous that a municipality should be taxed for furnishing electricity for the benefit of the public at large when it receives not a cent in return. We can hardly believe that that would foster the public welfare. The amended constitution ought not, we think, be construed as intended to stifle any activity which is for the general welfare of the people and which constitutes purely gratuitous service. We have seen that in the case of City of Chicago v. Ames, supra, the court held that the production of electricity for municipal purposes, if not for sale, is a governmental function. Although 3 Dillon, Municipal Corporations, 5th ed., § 1301, does not regard the construction and maintenance of electric light plants and waterworks strictly governmental, it is stated in § 1296, p. 2110, as follows:

"* * * Water and light are essential to the welfare of a city or compactly settled municipality. In the light of modern requirements such a municipality would fail in the purpose of its organization if, having the power, it omitted entirely to take such steps as are necessary or proper to obtain a supply of water and light for its streets and for the public use.* * *"

Of course, a city would not necessarily have to operate a municipal light plant itself but could procure, perhaps, outside capital to establish such a plant. 2 Pond, Public Utilities, 4th ed., § 418, would abolish all distinction between public and governmental property. We cannot go that far, as noted above. The eminent authority on taxation, Cooley, states as follows:

"The test of the right to tax is whether the property is devoted to a public use rather than whether it is used for governmental purposes. * * *" 2 Cooley, Taxation, 4th ed., § 639.

The author, however, draws a distinction where the property is used for the sale of a commodity to the public. It will be seen from the foregoing that it does not behoove this court to construe the term "governmental purpose" as used in the amended constitution here in question too narrowly. In the case of Hayes v. Town of Cedar Grove, 126 W.Va. 828, 30 S.E.2d 726, 730, 156 A.L.R. 702, the court stated as follows:

"* * * The line of distinction between what is governmental, and what is proprietary, is sometimes difficult to draw and is, in instances relating to parks, playgrounds and swimming pools, more or less arbitrary. In cases covering the operation of water works, power plants, and gas systems, there is no difficulty, and they are clearly proprietary. But we start with this premise: Any activity of the sovereign authority, or one to whom its powers are delegated, is presumed to be governmental; and it follows, we think, that if there be uncertainty as to the classification into which

the particular activity falls, the doubt should be resolved in favor of its being governmental rather than proprietary, for the reason that the usual function of government is to act in the interest of the public as a whole. In such a case, *where no profit to the municipality is involved, its acts are governmental.* Generally speaking, it is only where it steps aside, and, in a sense, enters a zone of private business, or into activities which may be and frequently are carried on through private enterprises, that its activities become proprietary." (Emphasis supplied.)

Instead of the phrase "where no profit to the municipality is involved, its acts are governmental", we should substitute the phrase that where a service is rendered by a municipality gratuitously and for the public welfare generally, such service should be considered governmental.

We think, accordingly, that we are constrained to hold that only that proportion of the value of a municipal electric light property should be assessed for taxation under Ch. 49, supra, which is used for the sale of electricity to rate payers, and the State Board of Equalization must carry out the intendment of this opinion.

The judgment of the trial court is affirmed except insofar as modified in this opinion.

Affirmed as modified.