**LAKE COUNTY SHERIFF'S MERIT BOARD, Appellant–Defendant,**

v.

**John BUNCICH, Appellee–Plaintiff,**

**Fraternal Order of Police Chris Anton Lodge Local 125 and Lake County Police Association, Local 72, Appellees–Intervenor Plaintiffs.**

No. 45A03–0609–CV–436.

Court of Appeals of Indiana.

July 9, 2007.

David N. Gilyan, Hobart, IN, Attorney for Appellant.

Michael E. Polen, Jr., Rubino, Ruman, Crosmer, Cerven, Smith & Sersic, Dyer, IN, Attorney for Appellees/Intervenor Plaintiffs.

**OPINION**

SULLIVAN, Judge.

Appellant–Defendant, the Lake County Sheriff's Merit Board appeals from the trial court's ruling in favor of Appellee–Plaintiff John Buncich and Appellees–Intervenor Plaintiffs the Fraternal Order of Police Chris Anton Lodge Local 125 and the Lake County Police Association Local 72 in Buncich's Complaint for Declaratory Judgment and Preliminary Injunction and in the Alternative Temporary Restraining Order.[1] Upon appeal, the Merit Board presents four issues, which we consolidate and restate as follows: (1) whether the trial court erred in denying the Merit Board's motion to dismiss Buncich's complaint; (2) whether the trial court erred in concluding that Buncich was the winner of a contested Merit Board election; and (3) whether there was sufficient evidence to determine that Buncich was qualified to be a member of the Merit Board.

We affirm.

The relevant facts are substantially undisputed. Prior to June 8, 2006, Ted Nowakowski was a member of the Merit Board elected by the members of the Lake County Police Department ("LCPD"). On June 8, 2006, the Merit Board held an election to fill the position created by Nowakowski's resignation. On June 28, 2006, LCPD Chief Marco Kuyachich and Merit

1. For simplicity's sake, we will refer to the Appellant–Defendant Lake County Sheriff's Merit Board as "the Merit Board," and to John Buncich as "Buncich." The Appellees–Intervenor Plaintiffs have filed appearances upon appeal. Although Buncich has not filed an appearance in this court, he remains a nominal appellee. *See* Appellate Rule 17(A). We will refer to the Fraternal Order of Police Chris Anton Lodge Local 125 as "the FOP," and to the Lake County Police Association Local 72 as "the LCPA." We will refer to the Appellees–Intervenor Plaintiffs collectively as "the Appellees."

Board Recording Secretary Geraldine Larson filed with the Merit Board the certified results of the June 8 election. These results revealed that there were 168 "merit members" of the LCPD. Of these, eighty-three voted for Buncich, twenty voted for Chester Farrell, III, and seventeen voted for George Nestorovich, Sr. Thus, only 120 of the 168 eligible voters actually cast a vote. Chief Kuyachich and Secretary Larson concluded that although Buncich had received more votes than the other candidates, he did not receive a "majority" of the votes of the LCPD members. According to them, the winner was required to receive at least eighty-five votes, i.e. one more than half of 168, to qualify as the winner. At a June 29, 2006 meeting, the Merit Board, by a unanimous vote of 3–0, decided to hold another election to be held on August 3, 2006 to fill the vacant seat.

Before this second election could take place, however, Buncich filed in the Lake Superior Court his Complaint for Declaratory Judgment and Preliminary Injunction and in the Alternative Temporary Restraining Order, requesting that the trial court declare him the winner of the June 8 election and prohibiting the Merit Board from taking any action until the seat vacated by Mr. Nowakowski was filled. On July 12, 2006, over the objection of the Merit Board, the trial court permitted the FOP and the LCPA to intervene in Buncich's suit.[2] The trial court also denied the Merit Board's motion to dismiss the complaint, and the trial court proceeded to hear the case. On July 18, 2006, the trial court entered an order which declared that Buncich was the winner of the June 8 election and ordered the Merit Board to permit Buncich to take the vacant seat on the Merit Board. The Merit Board filed a notice of appeal on August 18, 2006.

■ We first address the Merit Board's argument that the trial court erred in failing to grant the Merit Board's motion to dismiss Buncich's action. Specifically, the Merit Board contends that the trial court should have dismissed Buncich's action because an action in the nature of *quo warranto* is the only proper remedy. *Quo warranto* means "by what authority" or "by what warrant" and was the title of a common law writ used to determine the right of an individual to hold public office or to challenge a public officer's attempt to exercise a right or privilege derived from the state. *See* Black's Law Dictionary 1256 (6th ed.1990); *Quo Warranto,* 65 Am. Jur.2d § 1 (2001). In Indiana, actions in the nature of *quo warranto* are governed by statute. *See* Ind.Code § 34–17–1–1 (Burns Code Ed. Repl.1998).[3] It has been held that a proper challenge to an office is made by filing a *quo warranto* action. *Turner v. City of Evansville,* 740 N.E.2d 860, 863 n. 2 (Ind.2001) (citing *Hovanec v. Diaz,* 272 Ind. 342, 343, 397 N.E.2d 1249, 1250 (1979)); *see also City of Gary v. Johnson,* 621 N.E.2d 650, 652 (Ind.Ct.App. 1993) (holding that *quo warranto* is the proper remedy for determination of the right of a party to hold office). It has even been held that an action in *quo warranto,* not a declaratory judgment, is the proper remedy to determine the right to an office. *Madden v. Houck,* 403 N.E.2d 1133, 1135 (Ind.Ct.App.1980). Thus, the Merit Board claims that the trial court

---

**2.** The FOP and LCPA are parties to the collective bargaining agreement with the LCPD.

**3.** The phrase *quo warranto* does not appear in the statute, but cases have described actions brought under the predecessor statute to Indiana Code § 34–17–1–1 as being in the nature of *quo warranto. See, e.g., Brenner v. Powers,* 584 N.E.2d 569, 575–76 (Ind.Ct.App. 1992) (referring to Indiana Code § 34–1–59–1, which was substantially identical to Indiana Code § 34–17–1–1), *trans. denied.*

should have granted its motion to dismiss Buncich's declaratory action. We are unable to agree.

Pursuant to the applicable statute, an information may be filed "against any person ... [w]hen a person usurps, intrudes into, or unlawfully holds or exercises a public office or a franchise within Indiana...." I.C. § 34–17–1–1(1). Such an action may be filed by "the prosecuting attorney in the circuit court of the proper county ..." or by "any other person on the person's own relation, whenever the person claims an interest in the office, franchise, or corporation that is the subject of the information." Ind.Code § 34–17–2–1 (Burns Code Ed. Repl.1998).

In the present case, it is apparent that Buncich is claiming an "interest in the office" of the vacant seat on the Merit Board. However, Buncich is not claiming that anyone has usurped, intruded into, or is unlawfully holding or exercising a public office. To the contrary, he sought in the trial court to stop another election and to have himself declared the proper holder of the vacant seat. Thus, there is no person against whom an action in *quo warranto* could properly be brought because no one currently occupies the seat on the Merit Board. Since Buncich is not challenging the authority or the actions of any current office holder, but is instead seeking the currently vacant seat himself, an action in *quo warranto* is not the proper remedy. *See State ex rel. McCormick v. Superior Court of Knox County*, 229 Ind. 118, 124, 95 N.E.2d 829, 831–32 (1951) (an action for *quo warranto* does not lie until the one

holding the latest certificate of election or commission takes possession of the office and assumes the duties thereof); *see also Hovanec*, 272 Ind. at 343, 397 N.E.2d at 1250 (noting that *quo warranto* proceedings deal mainly with the right of the incumbent officer and do not determine the rights of any adverse claimant).[4] We therefore cannot say that the trial court erred in denying the Merit Board's motion to dismiss based upon the argument that an action in the nature of *quo warranto* was the only proper means of bringing this matter to the trial court.

■ The Merit Board also claims that the trial court erred in determining that Buncich was the winner of the election and that in doing so, the trial court misinterpreted the applicable statute. Sheriff's merit boards are governed by Indiana Code § 36–8–10–3 (Burns Code Ed. Repl. 2004), which reads in relevant part:

"(a) The fiscal body of each county shall, by ordinance, establish a sheriff's merit board to be known as the _____ county sheriff's merit board (inserting the name of the county).

(b) The board consists of five (5) members. Three (3) members shall be appointed by the sheriff, *and two (2) members shall be elected by a majority vote of the members of the county police force under procedures established by the sheriff's merit board ....*" (emphasis supplied).

Here, Buncich received eighty-three of the 120 votes cast. The trial court determined that Buncich had therefore been elected

---

4. In the cases cited by the Merit Board, the plaintiff was challenging the authority of someone who held an office, not seeking to be declared the winner of a vacant seat. *See Turner*, 740 N.E.2d at 861 (where plaintiff challenged police chief's right to hold office, court noted that *quo warranto* action was proper way to challenge an office); *Madden*,

403 N.E.2d at 1135 (where plaintiff sought declaratory judgment that defendant was not qualified to act as surveyor, court held that action in *quo warranto* was the proper means of seeking relief); *Hovanec*, 272 Ind. at 342–43, 397 N.E.2d at 1249 (plaintiff brought *quo warranto* action seeking to remove trial court judge from office).

"by a majority vote of the members of the county police force...." The Merit Board argues upon appeal that while eighty-three votes may be a majority of the votes cast, it is not a majority vote of the 168 members of the LCPD and therefore Buncich did not win the election.

The resolution of this question depends upon how we construe Indiana Code § 36–8–10–3(b). As explained in *Schrenger v. Caesars Indiana*, 825 N.E.2d 879, 881 (Ind.Ct.App.2005), *trans. denied:*

"Issues of statutory interpretation are pure questions of law and reviewed *de novo*. When interpreting statutes, our foremost objective is to determine and effect legislative intent. Statutes must be construed to give effect to legislative intent, and we must give deference to such intent whenever possible. We consider the goals of the statute and the reasons and policy underlying its enactment. We examine and interpret a statute as a whole, giving words their common and ordinary meaning, and do not overemphasize a strict, literal, or selective reading of individual words. We take words and phrases in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute. Every word must be given effect and meaning where possible, and no part is to be held meaningless if it can be reconciled with the rest of the statute. We ascertain the meaning and intention of the legislature not only from the phraseology of the statute but also by considering its nature, design, and the consequences which flow from the reasonable alternative interpretations of the statute." (citations omitted).

The statutory language, pared down to the relevant words, is "majority vote of the members of the county police force." Here, the word "majority" is used as an adjective modifying the noun "vote." The word "majority" does not describe "the members of the county police force." The prepositional phrase "of the members of the county police force" further modifies the term "majority vote," describing those who may vote. We therefore conclude as a matter of statutory construction that Indiana Code § 36–8–10–3(b) does not require that a successful candidate obtain the vote of a majority of all the members of the county police force, but only a "majority vote" of the members who do participate.

Our interpretation finds support in Black's Law Dictionary, where a "majority vote" is defined as:

"Vote by more than half of voters for candidate or other matter on ballot. When there are only two candidates, he who receives the greater number of the votes cast is said to have a majority; when there are more than two competitors for the same office, the person who receives the greatest number of votes has a *plurality*, but he has not a majority unless he receives a greater number of votes than those cast for all his competitors combined." Black's Law Dictionary 955 (6th ed.1990).

*See also* The New Shorter Oxford English Dictionary 1670 (1993) (defining "majority" as "[t]he number by which the votes cast for one party etc. exceed those for the next in rank."). Here, Buncich had the "majority vote" because he received a greater number of votes (eighty-three) than those cast for all his competitors combined (thirty-seven).

Our determination is not dissimilar to that of our Supreme Court in the case of *In re Todd*, 208 Ind. 168, 193 N.E. 865 (1935). In that case, the Court was confronted with the text of Article 16, Section 1 of the Indiana Constitution, concerning amendments to the Constitution. Pursuant to Article 16, Section 1(b), after a

proposed amendment has received the necessary approval of a majority of each house of two successive General Assemblies, the proposed amendment must be submitted to "the electors of the State at the next general election." Then, "If a majority of the electors voting on the amendment ratify the amendment, the amendment becomes a part of this Constitution." Ind. Constitution, Art. 16, Sec. 1(c). Prior decisions of our Supreme Court had held that "a proposed amendment which is submitted to the electors at a general election fails of adoption unless it is approved by a majority of all voters who vote at the general election." *See Todd,* 208 Ind. at 172, 193 N.E. at 866 (citing *State v. Swift,* 69 Ind. 505 (1880); *In re Denny,* 156 Ind. 104, 59 N.E. 359 (1901); *In re Boswell,* 179 Ind. 292, 100 N.E. 833 (1913)). The Court in *Todd* declined to follow these cases and held instead that "electors of the State" did not "designate the persons to compose a group a majority of the members of which must approve a proposed amendment in order for it to become a part of the Constitution." 208 Ind. at 194, 193 N.E. at 875. Instead, the words "electors of the State" "merely designate the part of our political organization to which the question ultimately must be referred." *Id.* The *Todd* Court concluded, "a proposed amendment becomes a part of the Constitution if it receives a majority of the votes cast for and against its adoption." *Id.*

Just as "electors of the State" was interpreted in *Todd* as describing to whom the question must be referred, here "members of the county police force" simply describes who may vote in the merit board election. As used in Indiana Code § 36–8–10–3, "majority" describes the type of "vote" required, and there is no reference to a "majority of the members of the county police force."

The Merit Board's references to other statutes are unavailing. Indiana Code § 36–4–6–11 and Indiana Code § 36–5–2–9.4, referring to city and town legislative bodies respectively, state, "A requirement that an ordinance, resolution, or other action of the legislative body be passed by a majority vote means at least a majority vote of all the elected members." In those statutes, however, the language is clear: a majority vote means at least a majority vote of all elected members. Indiana Code § 36–8–10–3 contains no similar provision. It merely states that two members of the sheriff's merit board be elected by a "majority vote of the members of the county police force." As explained, this does not require a majority of the members, but only a majority of those voting. Here, it is beyond dispute that Buncich received a majority of the votes cast. The trial court, therefore, did not err in concluding that Buncich was the winner of the election.

■ We further disagree with the Merit Board that the trial court used an extrinsic source to modify the plain meaning of the statute. To be sure, the trial court referred to Robert's Rules of Order in interpreting the meaning of "majority vote" as used in Indiana Code § 36–8–10–3. The trial court did so because Indiana Code § 36–8–10–3(b) states that a merit board election shall be held "under procedures established by the sheriff's merit board." The Merit Board's own rules, which were admitted into evidence before the trial court, state that "[t]he rules of parliamentary procedure, as set forth in Robert's Rules of Order shall govern the proceedings before the Board, in-so-far [sic] as they are not inconsistent with these rules or the laws of the State of Indiana." App. at 95. The trial court thus referred to the definition of "majority vote" contained in Robert's Rules of Order in determining whether Buncich had won the election.

Upon appeal, the Merit Board claims that the election of Merit Board members is not a "proceeding before the Board," and thus Robert's Rules of Order are inapplicable, and furthermore, that even if Robert's Rules of Order were applicable, they cannot, by the very terms of the Merit Board's own rules, contradict Indiana Code § 36–8–10–3.

As explained in the trial court's findings, Robert's Rules of Order defines "majority vote" as follows:

> " 'The word majority means "more than half"; and when the term majority vote is used without qualification—as in the case of the basic requirement—it means more than half of the votes cast by persons legally entitled to vote, excluding blanks or abstentions at a regular or properly called meeting at which a quorum is present.' " App. at 8 (quoting Robert's Rules of Order § 44 at p. 387 (10th ed)).

Although this definition might not comport with the interpretation of Indiana Code § 36–8–10–3 urged by the Merit Board, it is similar to that found in Black's Law Dictionary, and consistent with our interpretation of Indiana Code § 36–8–10–3. Thus, if the election were considered to be a proceeding before the Merit Board, there is no harm in the trial court referring to Robert's Rules of Order. Moreover, even if the election were not considered to be a proceeding before the Merit Board governed by Robert's Rules of Order, we cannot say that the trial court's reference to Robert's Rules of Order was reversible error because the definition of "majority vote" contained therein is consistent with our interpretation of Indiana Code § 36–8–10–3.

The Merit Board lastly contends that there was insufficient evidence before the trial court to establish that Buncich was qualified to hold office as a member of the Merit Board. Indiana Code § 36–8–10–3(b) also provides that "[n]ot more than two (2) of the members appointed by the sheriff nor more than one (1) of the members elected by the officers may belong to the same political party. All members must reside in the county." Upon appeal, the Merit Board claims that Buncich and the other Appellees introduced no evidence that Buncich was a resident of Lake County or that the other member of the board elected by the police force, George Rogge, was of a different political party than Buncich.

As the Appellees note, this issue was never properly before the trial court by either pleading or by agreement of the parties. Buncich's complaint presented only the issue of whether he was the winner of the election by a majority vote, and neither the Merit Board's answer nor its motion to dismiss presented the issue of Buncich's qualifications for the seat on the Merit Board. Although the Merit Board did briefly argue near the end of the hearing that Buncich had not presented evidence with regard to his qualifications, argument is not evidence, and the Merit Board could not inject this issue at such a late stage. *Cf. GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC.*, 764 N.E.2d 647, 651 (Ind.Ct.App.2002) (noting the axiom that when an issue is not presented to the trial court, it is forfeited for purposes of appeal).

The judgment of the trial court is affirmed.

ROBB, J., and VAIDIK, J., concur.